No. 2025-1839

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

PAUL H. YOON, ELIZABETH F. YOON,
TOBY G. DORAN, and THOMAS J. DORAN,

Petitioners,

v.

DOUGLAS A. COLLINS, Secretary of Veterans Affairs,

Respondent.

Appeal from the United States Court of Appeals for Veterans Claims
in No. 25-255

**RESPONDENT'S MOTION TO DISMISS AND OPPOSITION TO
EMERGENCY MOTION FOR INJUNCTION AND APPENDIX**

BRETT A. SHUMATE
*Assistant Attorney General*

*Of Counsel:*

Y. KEN LEE
*Deputy Chief Counsel*

JULIE HONAN
*Attorney*
*Department of Veterans Affairs*

PATRICIA M. MCCARTHY
*Director*

MARTIN J. HOCKEY, JR.
EMMA E. BOND
*Attorneys, Commercial Litigation Branch*
*Civil Division, U.S. Department of Justice*
*P.O. Box 480, Ben Franklin Station*
*Washington, DC 20044*
*(202) 305-2034*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...............................................................................ii

INTRODUCTION..............................................................................................1

STATEMENT OF THE ISSUES........................................................................3

STATEMENT OF THE CASE...........................................................................4

I.     Statutory Background ...........................................................................4

II.    Prior Proceedings .................................................................................6

ARGUMENT .....................................................................................................8

   I.    The Court Lacks Jurisdiction To Entertain This Appeal .................9

   II.   Petitioners Have Not Requested Mandamus Relief From This Court And,
         Even If They Had, Are Not Entitled To A Writ.............................13

   III.  If the Court Nonetheless Reaches the Merits of Petitioners' Emergency
         Motion, Petitioners Have Not Demonstrated That The Equities Favor
         Injunctive Relief............................................................................19

      A.   Petitioners Have Not Demonstrated Likelihood Of Success On The
           Merits.........................................................................................19

      B.   Petitioners Are Unable To Establish Irreparable Harm ...........21

      C.   The Balancing of Equities and Public Interest Favor Denying an
           Injunction...................................................................................22

CONCLUSION...............................................................................................23

# TABLE OF AUTHORITIES

**CASES**                                                                       **Page(s)**

*A.A.R.P. v. Trump*,
  145 S. Ct. 1364 (2025) ................................................................................passim

*Adams v. Principi*,
  256 F.3d 1318 (Fed.Cir.2001) .............................................................. 13

*Burris v. Wilkie*,
  888 F.3d 1352 (Fed. Cir. 2018) ........................................................2, 17, 18

*Carson v. Am. Brands, Inc.*,
  450 U.S. 79 (1981) ............................................................................11, 12

*Cheney v. U.S. Dist. Ct. for D.C.*,
  542 U.S. 367 (2004) ........................................................................14, 15, 19

*Cox v. West*,
  149 F.3d 1360 (Fed. Cir. 1998) ............................................................ 14

*Kramer v. Wilkie*,
  842 F. App'x 599 (Fed. Cir. 2021) ........................................................ 14

*Love v. McDonough*,
  100 F.4th 1388 (Fed. Cir. 2024) ........................................................... 18

*Martin v. O'Rourke*,
  891 F.3d 1338 (Fed. Cir. 2018) ........................................................14, 18

*Mote v. Wilkie*,
    976 F.3d 1337 (Fed. Cir. 2020) ............................................................ 22

*Mylan Labs. Ltd v. Janssen Pharmaceutica, N.V.*,
    989 F.3d 1375, 1381 (Fed. Cir. 2021) ............................................ 15, 19

*Roche v. Evaporated Milk Ass'n*,
    319 U.S. 21 (1943) ...................................................................... 13, 14

*Rudisill v. McDonough*,
    34 Vet. App. 176 (2021) ...................................................................... 21

*Rudisill v. McDonough*,
    601 U.S. 294 (2024) .............................................................................. 5

*Telecomm. Research and Action Ctr. v. F.C.C.*,
    750 F.2d 70 (D.C. Cir. 1984) .............................................................. 14

*Wanless v. Shinseki*,
    618 F.3d 1333 (Fed. Cir. 2010) ............................................................ 9

*Williams v. Principi*,
    275 F.3d 1361 (Fed. Cir. 2002) ..................................................... 12, 13

*Wolfe v. McDonough*,
    28 F.4th 1348 (Fed. Cir. 2022) .....................................................passim

## STATUTES

28 U.S.C. § 1292(a)(1) ................................................................... 11, 12

28 U.S.C. § 1651 ......................................................................... 3, 8, 13

28 U.S.C. § 1651(a) ............................................................................ 3

38 U.S.C. § 503 ................................................................................ 18

38 U.S.C. § 511 ................................................................................ 16

38 U.S.C. § 511(a) ................................................................. 6, 16

38 U.S.C. § 3011 ......................................................................... 4

38 U.S.C. § 3011(a) ..................................................................... 4

38 U.S.C. § 3011(a)(1)(A) ........................................................... 4

38 U.S.C. § 3013(a)(1) ................................................................. 4

38 U.S.C. § 3311(b) ..................................................................... 4

38 U.S.C. § 3312(a) ..................................................................... 4

38 U.S.C. § 3319 ......................................................................... 7

38 U.S.C. § 3322(d) ..................................................................... 5

38 U.S.C. § 3695 ....................................................................... 17

38 U.S.C. § 3695(a) ..................................................................... 4

38 U.S.C. § 7104 .................................................................. 11, 16

38 U.S.C. § 7252 ............................................................ 3, 16, 18

38 U.S.C. § 7252(a) ................................................................... 17

38 U.S.C. § 7261(a) .............................................................. 18, 21

38 U.S.C. § 7261(a)(2) ........................................................... 2, 17

38 U.S.C. § 7261(a)(2), (3)(C) .................................................. 17

38 U.S.C. § 7292 ................................................................. passim

38 U.S.C. § 7292(a) ............................................................. passim

38 U.S.C. § 7292(a), (d)(2) ............................................................... 1

38 U.S.C. § 7292(d)(2) ........................................................... 10, 11

**RULES**

Fed. Cir. R. 8(a) ........................................................................ 19

Fed. R. App. P. 8(a) ................................................................... 19

# INTRODUCTION

This Court lacks jurisdiction to entertain the appeal and emergency motion for injunction filed by petitioners Paul H. Yoon, Elizabeth F. Yoon, Toby G. Doran, and Thomas J. Doran. Petitioners ask the Court to enjoin the Secretary of Veterans Affairs "from denying" education benefits—in other words, to grant veterans' benefits. Pet'rs Emergency Mot. at 19, ECF 2 (Mot.). The Court lacks jurisdiction to entertain this request. There is no decision by the United States Court of Appeals for Veterans Claims (Veterans Court) to review and thus, no jurisdiction. *See* 38 U.S.C. § 7292(a). This Court's jurisdiction is limited to reviewing the validity of a Veterans Court decision on a rule of law and statutory or regulatory interpretation relied upon by the Veterans Court. *Id.* No such review can take place here, when there is no Veterans Court decision to review. In fact, there is no Board of Veterans' Appeals decision to review. Petitioners are now before this Court as they are dissatisfied with the timing of the Veterans Court's consideration of a similar motion made before that court designed to bypass board review and order the payment of benefits.

Petitioners attempt to justify this novel request by claiming that the Veterans Court lacks authority "to provide 'substantive monetary relief' as an Article I court," thus requiring immediate action to avoid irreparable harm. *See* Mot. at 18 (quoting *Burris v. Wilkie*, 888 F.3d 1352, 1361 (Fed. Cir. 2018)). But the Veterans Court has authority to "compel action of the Secretary unlawfully withheld or unreasonably

delayed," 38 U.S.C. § 7261(a)(2), as the Veterans Court acknowledged when ordering the Secretary to respond to petitioners' filing before that court, Appx32. Thus, any allegedly unlawful deprivation of education benefits is not irreparable, but rather could be remedied—if appropriate—through the usual appellate process, in which the Veterans Court may order reimbursement of educational benefits that were unlawfully denied. Regardless, equitable considerations such as irreparable harm do not authorize the Court to act beyond the jurisdiction established by Congress—particularly when it comes to payment of monetary benefits. *See Burris*, 888 F.3d at 1359, 1361 (holding the Veterans Court lacked jurisdiction to grant equitable relief delegated to the Secretary).[1]

Nor does the Court possess authority to entertain petitioners' request pursuant to the All Writs Act, which authorizes relief in aid of this Court's prospective jurisdiction. *See* 28 U.S.C. § 1651(a). Far from seeking relief in aid of the Court's jurisdiction, petitioners ask the Court to order the payment of benefits in the first instance. Mot. at 19. Such relief would not protect the Court's jurisdiction, but instead would displace the carefully crafted statutory scheme for the adjudication of

---

[1] Pursuant to Federal Circuit Rule 27(a)(2), we have consulted with counsel for petitioners, Timothy L. McHugh, who indicated that petitioners oppose this motion to dismiss and intend to file a response.

2

veterans' benefits and appeals. *See, e.g.*, 38 U.S.C. §§ 511, 7104, 7252. Thus, there is no basis for the Court to exercise mandamus authority in this case.

## STATEMENT OF THE ISSUES

1.     Whether the Court lacks jurisdiction to entertain the appeal pursuant to 38 U.S.C. § 7292, when there is no Veterans Court decision for this Court to review.

2.     Whether the All Writs Act, 28 U.S.C. § 1651, does not authorize the Court to entertain petitioners' request for the Court to decide substantive entitlement to benefits in the first instance.

3.     To the extent the Court reaches the merits of petitioners' motion for injunctive relief, whether petitioners fail to establish likelihood of success on the merits of the mandamus petition filed with the Veterans Court or the remaining equitable factors for injunctive relief.

## STATEMENT OF THE CASE

### I.    Statutory Background

Congress has established several VA educational benefits programs, including the Montgomery GI Bill enacted in 1984 and the Post-9/11 GI Bill enacted in 2008. *See, e.g.*, 38 U.S.C. §§ 3011, 3311. Both programs establish a minimum threshold of active-duty service to qualify for benefits—typically, two to three years of continuous service for the Montgomery GI Bill and at least 90 days of aggregate service for the

3

Post-9/11 GI Bill. 38 U.S.C. §§ 3011(a); 3311(b). Each program generally allows a maximum of 36 months of benefits, 38 U.S.C. §§ 3013(a)(1); 3312(a), subject to a cap of 48 months total for any combination of education programs, *id.* § 3695(a).

In both programs, Congress limited entitlement to individuals with certain specified service during a statutory period. The Montgomery GI Bill applies to individuals who first become a member of the Armed Forces in the period from July 1, 1985, to September 30, 2030. *See* 38 U.S.C. § 3011(a)(1)(A). The Post-9/11 GI Bill applies to veterans who served on active duty in the Armed Forces on or after September 11, 2001. *See* 38 U.S.C. § 3311(b). In light of this overlapping coverage, Congress also enacted limitations governing coordination and election of benefits under the two programs. *See, e.g.*, 38 U.S.C. §§ 3322(d), 3327.

The Supreme Court recently considered coordination of benefits under the Montgomery GI Bill and the Post-9/11 GI Bill in the case of a veteran with two separate entitlements based on "three distinct periods of military service." *Rudisill v. McDonough*, 601 U.S. 294, 303, 314 (2024). The Court addressed two provisions governing election and coordination of benefits—38 U.S.C. §§ 3322(d) and 3327—and held that neither of these provisions "restrict veterans with two separate entitlements, who simply seek to use either one." *Id.* at 314. Thus, veterans who "separately accrue

4

benefits under both the Montgomery and Post-9/11 GI Bills are entitled to both benefits." *Id.* at 314.

On May 16, 2025, the Veterans Court issued a precedential opinion addressing eligibility for Montgomery and Post-9/11 benefits for a veteran with a single, continuous period of service. Order, *Perkins v. Collins*, Vet. App. No. 24-6515, Appx56-74. The court held that "a veteran whose single period of service is long enough to qualify for benefits under both the [Montgomery and Post-9/11] programs without using any period of time twice to establish eligibility is entitled to receive benefits under both programs up to a statutory 48-month cap on such educational benefits." Appx57. Judgment issued on June 10, 2025. Appx75. The deadline to appeal this decision has not yet passed.

## II.    Prior Proceedings[2]

On January 10, 2025, petitioners Paul H. Yoon, Elizabeth F. Yoon, Toby G. Doran, and Thomas J. Doran filed a petition for extraordinary relief with the Veterans Court, Appx8-31, asserting jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651, Appx22. At the time, all petitioners had appeals pending before the Board of

---

[2] For purposes of this motion, we accept as true the facts as alleged in the petition and attachments, without prejudice to VA "decid[ing] all questions of law and fact" when deciding claims and appeals. 38 U.S.C. § 511(a).

Veterans' Appeals (board) regarding entitlement to Post-9/11 education benefits.[3]
Appx19, Appx22.  Petitioner Toby Doran served on active duty in the U.S. Air Force
for multiple periods of service—the first from 1987 to 1991 and the second from 1995
to 2018.  Appx20.  In his board appeal, Toby Doran sought to transfer 14 months and
5 days of Post-9/11 benefits to his son, Thomas Doran, to help fund his education.
Appx21-22; *see also* 38 U.S.C. § 3319 (authorizing transfer to eligible dependents in
certain situations).

Petitioner Paul Yoon served on active duty in the U.S. Army from 1998 to 2021
in one continuous period of service.  *See* Appx18.  In the pending board appeal, Mr.
Yoon sought to transfer 14 months of Post-9/11 benefits to his daughter, petitioner
Elizabeth Yoon, for her studies at Harvard Law School.  Appx19-20.  Ms. Yoon
started her degree in August 2024 and is projected to graduate in May 2027.  Appx19,
Appx27.  Among other relief, petitioners asked the Veterans Court to enjoin the
Secretary from denying their full entitlement to educational benefits during the
pendency of their appeals.  Appx30-31.

---

[3] According to the attachments to the emergency motion, the Yoons filed
decision review requests with the board in November 2024, *see* ECF No. 2 at 65, 204,
and the Dorans filed decision review requests with the board in December 2024, ECF
No. 2 at 378, 454 (citing page numbers from ECF header).

On April 28, 2025, the Secretary filed an opposition to the petition, Appx34-53, explaining that VA had granted the relief requested by Mr. Doran, and thus the petition was "moot as to him," Appx36. With respect to Mr. Yoon, the Secretary argued that he had an adequate remedy by appeal and, thus, there was no basis for granting a petition for extraordinary relief. Appx37. The Secretary also argued that the "requirements for injunctive relief have not been met." Appx38-39.

On May 5, 2025, petitioners filed a motion to submit a reply, which the Veterans Court granted the next day. Appx6. On June 2, 2025, petitioners filed a letter stating "that if this Court does not grant relief by June 4, 2025, Petitioners believe that would serve as a constructive denial of their Petition for Extraordinary Relief[.]" Appx54-55. Petitioners filed a notice of appeal on June 5, 2025, approximately one month after filing their reply. Appx6. The Veterans Court has not yet issued any decision on the petition.

## ARGUMENT

The Court lacks jurisdiction to entertain this appeal or the petitioners' emergency motion for injunctive relief. The Court's jurisdiction pursuant to 38 U.S.C.

§ 7292 is limited to reviewing decisions of the Veterans Court. Here, there is no decision for the Court to review, requiring dismissal for lack of jurisdiction.

Nor does the Court possess authority to grant the requested relief pursuant to 28 U.S.C. § 1651. In extraordinary cases, the Court may issue a writ of mandamus in aid of the Court's prospective jurisdiction. *See* 28 U.S.C. § 1651. Petitioners, however, have not requested such relief, and instead ask the Court to decide entitlement to benefits in the first instance. Rather than seeking to protect the Court's prospective jurisdiction to review a decision by the Veterans Court, this request would displace the comprehensive statutory scheme for adjudicating claims for veterans' benefits and appealing decisions on such claims.

If the Court nonetheless reaches the merits of petitioners' request for injunctive relief, it should be denied. Petitioners have not demonstrated likelihood of success on their mandamus petition to the Veterans Court. Nor have they established irreparable harm absent immediate review; instead, relief is available through the usual channels established by Congress. The equities also support channeling requests through the

statutory process for appellate review; allowing certain litigants to jump in line would

be unfair to other claimants awaiting relief.

Each of these points is discussed in further detail below.

## I.    The Court Lacks Jurisdiction To Entertain This Appeal

The appeal should be dismissed for lack of jurisdiction because there is no

decision of the Veterans Court for the Court to review.  *See* 38 U.S.C. § 7292.

Petitioners do not dispute that a Veterans Court decision is a jurisdictional

requirement, but contend that the Veterans Court's "inaction" had the "effect of

refusing an injunction," subject to interlocutory appeal.  *See* Mot. at 14 (quoting

*A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1367 (2025) (*per curiam*)).  This argument

misunderstands the Court's jurisdictional statute in 38 U.S.C. § 7292, which does not

allow for review of alleged inaction by the Veterans Court.

By statute, this Court has limited jurisdiction to review a decision of the

Veterans Court "[a]fter a decision . . . is entered in a case."  38 U.S.C. § 7292(a).  Even

when there is a decision subject to review, the Court's "jurisdiction to review decisions

by the Veterans Court is limited."  *Wanless v. Shinseki*, 618 F.3d 1333, 1336 (Fed. Cir.

2010).  Pursuant to 38 U.S.C. § 7292(a), this Court may review a Veterans Court

decision only "with respect to the validity of a decision of the Court on a rule of law or

of any statute or regulation . . . or any interpretation thereof . . . that was relied on by

the Court in making the decision." This Court may not review the Veterans Court's factual findings or its application of law to facts absent a constitutional issue. 38 U.S.C. § 7292(a), (d)(2).

There is no Veterans Court decision for this Court to review in this case, and thus, no jurisdiction. Petitioners' theory of a "constructive" denial through inaction does not satisfy the jurisdictional requirement for a Veterans Court decision. *See, e.g.*, Mot. at 14 and Statement Regarding Rule 8(a)(2), ECF No. 2 at 15, 25 (citing *A.A.R.P.* 145 S. Ct. 1367). Absent a decision to review, the Court's authority to review the "validity" of a Veterans Court's "decision" on a rule of law would become a matter of pure speculation regarding the matters purportedly decided by the Veterans Court. *See* 38 U.S.C. § 7292(a). Likewise, this Court cannot review an interpretation of statute or regulation "relied on" by the Veterans Court when the Veterans Court has not yet issued a decision. *See id.*

Even the prohibition in section 7292(d)(2)—barring this Court from reviewing the Veterans Court's findings of fact or application of law to fact—would make little sense if reviewing alleged inaction in lieu of a Veterans Court decision. Absent a decision subject to review, this Court would be in the position of not only *reviewing* findings of fact (already prohibited), but instead making such findings of fact in the first instance. Indeed, that is precisely what petitioners ask the Court to do here, by

10

asking the Court to decide Mr. Yoon's entitlement to benefits, based on facts such as Mr. Yoon's years of service, educational history, and authority to transfer benefits to qualifying dependents. *See* Mot. at 15. Congress has mandated that the Secretary of Veterans Affairs shall make all necessary findings of fact regarding claims for veterans' benefits, 38 U.S.C. § 511, with review by the board, *id.* § 7104, appeals to the Veterans Court, *id.* § 7252, and limited review by this Court, *id.* § 7292. Petitioners' request for the Court to review the Veterans Court's alleged inaction (rather than a decision) flies in the face of this statutory scheme.

The authorities cited by petitioners do not show otherwise. *See* Mot. at 14 (citing, *e.g.*, *A.A.R.P.*, 145 S. Ct. at 1367). *A.A.R.P.* and the cases cited therein arose from regional circuit courts of appeals reviewing interlocutory decisions of federal district courts pursuant to 28 U.S.C. § 1292. *See, e.g.*, *A.A.R.P.*, 145 S. Ct. at 1367; *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981). Section 1292(a)(1) grants the courts of appeal jurisdiction to review interlocutory orders of the district courts of the United States "refusing" injunctions. 28 U.S.C. § 1292(a)(1). When interpreting this jurisdictional statute, the Supreme Court has explained that decisions not explicitly refusing an injunction may nonetheless have "the practical effect of doing so" when they impose "serious, perhaps irreparable consequences" that petitioners can

"effectually challenge" only by an immediate appeal. *Carson*, 450 U.S. at 84, 90 (citations omitted).

The same reasoning does not apply to this Court's jurisdiction to review decisions of the Veterans Court. *See* 38 U.S.C. § 7292. Unlike the court of appeals' jurisdiction to review decisions refusing an injunction by a U.S. district court, 28 U.S.C. § 1292(a)(1), this Court has only limited jurisdiction to review the validity of a Veterans Court decision on a rule of law or the Veterans Court's interpretation of statute or regulation. 38 U.S.C. § 7292(a). Such authority cannot be exercised in the first instance, when the Veterans Court has not issued a decision. Because no such decision has issued here, the Court lacks jurisdiction.[4]

Petitioners also cite *Williams v. Principi*, 275 F.3d 1361, 1363–64 (Fed. Cir. 2002), for the proposition that no "final" decision is required by 38 U.S.C. § 7292. Mot. at 14. That is an incomplete summary of *Williams*, in which the Court explained that it "generally declined to review non-final orders of the Veterans Court." *Williams*, 275 F.3d at 1363 (quoting *Adams v. Principi,* 256 F.3d 1318, 1320 (Fed. Cir. 2001)). The

---

[4] *A.A.R.P.* is also distinguishable on the facts. In *A.A.R.P.*, the Government reserved the right to deport petitioners by midnight, after which "the Government may have argued, as it has previously argued, that no U.S. court had jurisdiction to order relief." *A.A.R.P*, 145 S. Ct. at 1367. This case, by contrast, involves a dispute over educational benefits for which there is an adequate remedy by appeal. *See* Section II (discussing an alternative avenue of appeal).

12

jurisdictional defect in this case is not a "non-final" decision, but instead the absence

of any decision at all. Nothing in *Williams* supports the exercise of jurisdiction in this

scenario.

## II.    Petitioners Have Not Requested Mandamus Relief from this Court and, Even If They Had, Are Not Entitled To a Writ

Even absent a Veterans Court decision to review pursuant to 38 U.S.C. § 7292,

the Court has authority to act "in aid of" its appellate jurisdiction pursuant to the All

Writs Act. *See* 28 U.S.C. § 1651. However, the relief requested by petitioners is not in

aid of the Court's prospective jurisdiction to review Veterans Court decisions, but

instead would displace the statutory scheme for deciding and reviewing eligibility to

benefits administered by VA. Thus, the Court lacks authority to entertain petitioners'

emergency motion pursuant to 28 U.S.C. § 1651.

Pursuant to section 1651, this Court "may issue all writs necessary or

appropriate in aid of [its] jurisdiction[] and agreeable to the usages and principles of

law." 28 U.S.C. § 1651. The "function of mandamus in aid of appellate jurisdiction is

to remove obstacles to appeal[.]" *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26 (1943).

"'A writ of mandamus may not be used to compel an outcome-specific order." *Wolfe*

*v. McDonough*, 28 F.4th 1348, 1358 (Fed. Cir. 2022) (quoting *Kramer v. Wilkie*, 842 F.

App'x 599, 604-05 (Fed. Cir. 2021)).

13

"[T]he 'traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Cox v. West*, 149 F.3d 1360, 1364 (Fed. Cir. 1998) (quoting *Roche*, 319 U.S. at 26). For example, this Court held that the Veterans Court has authority to entertain allegations of unreasonable delay by the board in aid of the Veterans Court's prospective appellate jurisdiction to review decisions of the board. *Martin v. O'Rourke*, 891 F.3d 1338, 1342-43 (Fed. Cir. 2018) (citing *Telecomm. Research and Action Ctr. v. F.C.C.*, 750 F.2d 70, 76 (D.C. Cir. 1984)).

In this case, by contrast, petitioners do not request relief in aid of this Court's jurisdiction to review decisions of the Veterans Court, but instead seek to "dictate a particular outcome" regarding entitlement to education benefits. *Wolfe*, 28 F.4th at 1358. Petitioners argue that Mr. Yoon is entitled to benefits under both the Montgomery and Post-9/11 GI Bills based on Mr. Yoon's years of service, monetary contributions, educational history, and authority to transfer benefits to qualifying dependents. *See* Mot. at 15. Although the Secretary has not issued his final decision in the matter pursuant to 38 U.S.C. § 511—an appeal remains pending before the board—petitioners ask the Court to find that it is "clear error for the Secretary to deny Petitioners their full suite of educational benefits on these facts[.]" Mot. at 15. The

14

Court's mandamus authority does not authorize such "outcome-specific" relief. *See Wolfe*, 28 F.4th at 1358 (citation omitted).

Application of the traditional three-factor test governing mandamus relief confirms that the writ is not appropriate here. "Mandamus is a 'drastic and extraordinary remedy reserved for really extraordinary causes.'" *Mylan Labs. Ltd v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1381 (Fed. Cir. 2021) (quoting *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004)). Because "the writ is one of the most potent weapons in the judicial arsenal, three conditions must be satisfied before it may issue": namely, "[t]he petitioner must: (1) show that it has a clear and indisputable legal right; (2) show it does not have any other adequate method of obtaining relief; and (3) convince the court that the writ is appropriate under the circumstances." *Id.* (quoting *Cheney*, 542 U.S. at 380-81).

Here, petitioners have not demonstrated a clear and undisputable right to a writ. Considering the posture of this case—an appeal from a similar petition in the Veterans Court seeking a direct award of benefits, *see* Appx22, Appx31—petitioners must show a clear and indisputable right to an order from this Court requiring the Veterans Court to order the board to grant educational benefits. Not only would such an order exceed the bounds of mandamus relief and this Court's jurisdiction, but it would violate the statutory scheme governing veterans' benefits. *See, e.g.*, 38 U.S.C. §§ 511, 7104, 7252.

15

"The Secretary shall decide all questions of law and fact" necessary to deciding the provision of veterans' benefits. 38 U.S.C. § 511(a). Unless appealed through proper channels (or subject to another exception), "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, *whether by an action in the nature of mandamus or otherwise.*" 38 U.S.C. § 511(a) (emphasis added). Here, VA has not even issued its final decision on Mr. Yoon's appeal. Petitioners are not entitled to mandamus relief ordering the Veterans Court to order VA to pay educational benefits—even on a temporary basis.

Second, petitioners have an adequate alternative method to obtain relief— namely, pursuing the usual appeals process before the board—the outcome of which may be appealed to the Veterans Court and, ultimately, this Court. *See* 38 U.S.C. §§ 7104, 7252, 7292. To the extent the appellate process is not completed by August, relief could still be granted in the event of a subsequent decision in favor of the Yoons. The Veterans Court is authorized to "compel action of the Secretary unlawfully withheld or unreasonably delayed," and to "hold unlawful and set aside decisions" found to be "in violation of a statutory right." 38 U.S.C. § 7261(a)(2), (3)(C). Within this scope of review, the Veterans Court may "modify" or "reverse a decision of the Board or . . . remand the matter, as appropriate." 38 U.S.C. § 7252(a). This scope of

authority authorizes ordering reimbursement of educational benefits that were
unlawfully denied.

Petitioners claim that "this Court's decision in *Burris v. Wilkie* removes any
doubt that the Veterans Court lacks authority to provide 'substantive, monetary relief'
as an Article I court." Mot. at 18 (citing *Burris*, 888 F.3d at 1361). But *Burris* involved
a request for "extra-statutory relief." *Burris*, 888 F.3d at 1358. By contrast, this case
involves a demand for relief that petitioners claim is required by statute. *See, e.g.*, Mot.
at 2. The Court in *Burris* acknowledged that the Veterans Court may compel "actions
of the Secretary that are 'unlawfully withheld or unreasonably delayed,'" and "set aside"
Board decisions that are unlawful, including decisions that are "in violation of a
statutory right." *Burris*, 888 F.3d at 1358 (citing 38 U.S.C. § 7261(a)(2), (3), (4)).
Should petitioners ultimately succeed on a claim that Mr. Yoon is statutorily entitled to
additional educational benefits, the Veterans Court would have authority to order
payment of unlawfully withheld or unreasonably delayed educational benefits. 38
U.S.C. § 7261(a).[5] "When, as here, there is a remedy by appeal, '[i]t is well established

---

[5] Petitioners also cite the response brief in *Hambidge v. Collins*, No. 24-1670, but
the relevant portion of the brief explains that although "[t]he Secretary is empowered
under 38 U.S.C. § 503 to grant equitable relief," the Veterans Court "does not possess
jurisdiction to review these discretionary determinations." Resp. Br. at 23 n.4,
*Hambidge v. Collins*, No. 24-1670 (citing *Burris*, 888 F.3d at 1360). In this case, by
contrast, petitioners do not seek relief pursuant to VA's equitable authority pursuant to

that mandamus is unavailable.'" *Love v. McDonough*, 100 F.4th 1388, 1395 (Fed. Cir. 2024) (quoting *Wolfe*, 28 F.4th at 1357).

"The remedy by appeal exception to mandamus applies even if a different type of mandamus order is itself necessary to create the appealable decision." *Love*, 100 F.4th at 1395 (citation omitted).  For example, to the extent petitioners believe the board has unreasonably delayed in issuing a decision, they may pursue mandamus relief on that basis.  *Martin*, 891 F.3d at 1342-43.  Alternatively, if the Veterans Court unreasonably delayed issuing a decision on the petition for mandamus, petitioners may seek a writ from this Court to require a Veterans Court decision.  However, petitioners have not requested any of these alternatives.

Finally, the writ is not "appropriate under the circumstances," *Mylan Labs.*, 989 F.3d at 1381 (quoting *Cheney*, 542 U.S. at 380-81), in which petitioners request an initial decision on entitlement to benefits without first obtaining a final decision by VA or review by the Veterans Court.

---

38 U.S.C. § 503, but instead argue that VA was statutorily obligated to pay educational benefits pursuant to the Montgomery GI Bill and the Post-9/11 GI Bill.

III.    **If the Court Nonetheless Reaches the Merits of Petitioners' Emergency Motion, Petitioners Have Not Demonstrated That the Equities Favor Injunctive Relief**

As demonstrated above, the Court lacks authority to entertain petitioners' request for injunctive relief pursuant to 38 U.S.C. § 7292 or 28 U.S.C. 1651. If the Court nonetheless reaches the merits of petitioners' emergency request for injunctive relief pending appeal, *see* Fed. Cir. R. 8(a), Fed. R. App. P. 8(a), we respectfully request that the Court deny the motion because none of the criteria for injunctive relief are satisfied here.

A.    **Petitioners Have Not Demonstrated Likelihood Of Success On The Merits**

Petitioners characterize the merits question as whether they are likely to succeed in demonstrating entitlement to additional educational benefits for Mr. Yoon.[6] *See* Mot. at 14-16. But this Court lacks authority to make such a benefits determination in the first instance. *See* 38 U.S.C. §§ 511, 7104, 7252, 7292. Thus, to the extent the Court exercises appellate jurisdiction as requested by petitioners, *see* Mot. at 14 (citing

---

[6] The motion is confusing on this point by requesting relief to all those "with lengthy continuous service," Mot. at 19—despite failing to request class treatment by the Veterans Court or explain how the Court would have authority to order relief for non-parties. The motion also discusses entitlement to benefits by petitioner Toby Doran, despite also indicating that no injunctive relief is currently requested for Mr. Doran. *See* Mot. at 14 n.6 (reserving the right to seek relief for the Dorans in the future).

38 U.S.C. § 7292(a)), the merits question for this Court is whether the Veterans Court legally erred by not granting the petition for mandamus relief, and by not issuing a decision on the timeline demanded by petitioners.

Petitioners are not likely to succeed in showing that the Veterans Court legally erred in failing to grant the petition by June 4, 2025—to the extent such an inquiry is even possible without a decision to review. The petition asked the Veterans Court to enjoin the Secretary from denying benefits, Appx31—thus requesting an "outcome-specific order" that is inappropriate for mandamus relief. *Wolfe*, 28 F.4th at 1358 (citation omitted). Before this Court, moreover, petitioners do not even mention the stringent factors required for the Veterans Court to grant the extraordinary remedy of mandamus relief. Thus, they fail to show likelihood of success on the merits of those factors.

Like petitioners, amici curiae Military-Veterans Advocacy Inc. (MVA), Veterans of Foreign Wars of the United States (VFW), the Coalition of States, and the National Veterans Legal Services Program (NVLSP) focus on the ultimate question of entitlement to benefits under the statutory scheme. *See, e.g.*, MVA Br. at 10-14 (arguing for application of the pro-veteran canon in the question of entitlement to benefits); VFW Br. at 18-22, 24 (relying on the pro-veteran canon and arguing that "[m]ore service should not result in fewer benefits"); NVLSP Br. at 6 (arguing that Paul Yoon

20

and Toby Doran "earned two separate educational benefits," and "are entitled to transfer them both to their children under 38 U.S.C. § 3319"); State Coal. at 11-14 (arguing that the denial of benefits violates *Rudisill*). This fails to acknowledge the posture of the case at the Veterans Court—a petition seeking extraordinary relief in the form of an order to pay benefits, before the VA issued its final decision on entitlement. *See* Appx22, Appx30-31. Because petitioners have not shown that they were likely to succeed in obtaining a writ from the Veterans Court pursuant to 28 U.S.C. § 1651, they fail to establish likelihood of success on the merits in this appeal.

## B.    Petitioners Do Not Establish Irreparable Harm

Additionally, petitioners fail to establish that they will experience irreparable harm from pursuing the usual appellate process. Even if no final decision is issued by August of this year when the next tuition payments are due, *see* Mot. at 2, petitioners may be reimbursed for statutorily required education benefits that were unlawfully withheld. *See, e.g.*, 38 U.S.C. § 7261(a). Although the Veterans Court has previously found that an appellant would be irreparably harmed when a disruption in benefits would have "forced" him to "terminate his seminary program," *Rudisill v. McDonough*, 34 Vet. App. 176, 185 (2021), no similar allegation is made in this case that could render relief through the appellate process illusory.

Petitioners do not allege irreparable harm to Mr. Doran, *see* Appx17-18, and there is none; indeed, VA found that he was entitled to the full 48 months of benefits for Montgomery and Post-9/11 benefits. *See* Appx42, Appx45. "[A] case becomes moot when a claimant receives all her requested relief." *See Mote v. Wilkie*, 976 F.3d 1337, 1341 (Fed. Cir. 2020) (citation omitted).

### C. The Balancing of Equities and Public Interest Favor Denying an Injunction

Finally, the balancing of the equities and the public interest do not support granting petitioners' requested relief. The appellate process designed by Congress could not function if every claimant with sympathetic requests could skip the line and obtain review from this Court on the ultimate question of entitlement to benefits. Yet, that is what petitioners request in this case. Because petitioners can pursue relief through the usual appellate process, and because the proper functioning of that appellate process is in the public interest, the equities favor denying the requested injunctive relief.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the petitioners' appeal or, in the alternative, deny the emergency motion for injunctive relief.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

OF COUNSEL

Y. KEN LEE
Deputy Chief Counsel

JULIE HONAN
Attorney
Department of Veterans Affairs
810 Vermont Ave., N.W.
Washington, DC 20420

June 13, 2025

/s/Emma E. Bond
EMMA E. BOND
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Washington, D.C. 20044
(202) 305-2034
emma.e.bond@usdoj.gov

Attorneys for Respondent

**APPENDIX TO MOTION TO DISMISS AND
OPPOSITION TO EMERGENCY MOTION FOR INJUNCTION**

# TABLE OF CONTENTS

**Document**                                                                                      **Page**

Docket, *Yoon v. Collins*, Vet. App. 25-255
(printed June 12, 2025) ............................................................................ Appx1

Petition (attachments omitted), *Yoon v. Collins*, Vet. App. 25-255
(Jan. 10, 2025) ......................................................................................... Appx8

Order to Respond, *Yoon v. Collins*, Vet. App. 25-255
(Mar. 7, 2025) ....................................................................................... Appx32

Secretary Response and Exhibits, *Yoon v. Collins*, Vet. App. 25-255
(Apr. 28, 2025) ...................................................................................... Appx34

Notice Regarding Appeal, *Yoon v. Collins*, Vet. App. 25-255
(June 2, 2025) ........................................................................................ App54

Opinion, *Perkins v. Collins*, Vet. App. 24-6515
(May 16, 2025) ...................................................................................... Appx56

Judgment, *Perkins v. Collins*, Vet. App. 24-6515
(June 10, 2025) ..................................................................................... Appx75

**General Docket**
**United States Court of Appeals for Veterans Claims**

| | |
|---|---|
| **Case Number:** 25-255<br>Paul H. Yoon, et al v. Douglas A. Collins<br>**Appeal From:** Department of Veteran Affairs<br>**Fee Status:** fee paid | **Docketed:** 01/10/2025 |

**Case Type Information:**
  **1)** Petition
  **2)** -
  **3)** -

**Prior Cases:**
  None

**Current Cases:**
  None

---

Paul H. Yoon
      Petitioner

Timothy L. McHugh, Esq., Attorney
Direct: 804-697-1365
[COR LD NTC]
Firm: 804-697-1365
Troutman Pepper Locke LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219

David J. DePippo, Esq., Attorney
Direct: 804-819-2411
[COR NTC]
Firm: 804-819-2411
Dominion Resources Services, Inc.
Riverside 5, 120 Tredegar Street
Richmond, VA 23219

Lauren Miller, Esq., Attorney
Direct: 804-697-1223
[COR NTC]
Firm: 804-697-1223
Troutman Pepper Locke LLP
1001 Haxall Point
Richmond, VA 23219

William Harold Smith, III, Esq., Attorney
Direct: 201-565-6253
[COR NTC]
Firm: 201-565-6253
Troutman Pepper
1001 Haxall Point, 15th Floor
Richmond, VA 23219

Elizabeth F. Yoon
      Petitioner

Timothy L. McHugh, Esq., Attorney
Direct: 804-697-1365
[COR LD NTC]
(see above)

David J. DePippo, Esq., Attorney
Direct: 804-819-2411
[COR NTC]
(see above)

Lauren Miller, Esq., Attorney
Direct: 804-697-1223
[COR NTC]
(see above)

William Harold Smith, III, Esq., Attorney
Direct: 201-565-6253

[COR NTC]
(see above)

Toby G. Doran
         Petitioner

Timothy L. McHugh, Esq., Attorney
Direct: 804-697-1365
[COR LD NTC]
(see above)

David J. DePippo, Esq., Attorney
Direct: 804-819-2411
[COR NTC]
(see above)

Mary Grace W. Metcalfe, Esq., Attorney
Direct: 212-704-6029
[COR NTC]
Firm: 212-704-6029
Troutman Pepper Locke LLP
875 Third Avenue
New York, NY 10022

Lauren Miller, Esq., Attorney
Direct: 804-697-1223
[COR NTC]
(see above)

William Harold Smith, III, Esq., Attorney
Direct: 201-565-6253
[COR NTC]
(see above)

Thomas J. Doran
         Petitioner

Timothy L. McHugh, Esq., Attorney
Direct: 804-697-1365
[COR LD NTC]
(see above)

David J. DePippo, Esq., Attorney
Direct: 804-819-2411
[COR NTC]
(see above)

Lauren Miller, Esq., Attorney
Direct: 804-697-1223
[COR NTC]
(see above)

William Harold Smith, III, Esq., Attorney
Direct: 201-565-6253
[COR NTC]
(see above)

v.

Douglas A. Collins, Secretary of Veterans Affairs
         Respondent

Mark M. McNabb, Esq., Attorney
Direct: 202-632-4365
[COR LD NTC]
Firm: 202-632-4365
Department of Veterans Affairs, OGC (027)
810 Vermont Ave., NW
Washington, DC 20420

Mark J. Hamel, Esq., Attorney
Direct: 202-632-6135
[COR NTC]
Firm: 202-632-6135
Department of Veterans Affairs, OGC (027)
810 Vermont Avenue, N.W.
Washington, DC 20420

OGC-ICM5, Non-Attorney

Direct: 202-632-6978
[COR NTC]
Department of Veterans Affairs, OGC (027)
810 Vermont Avenue, N.W.
Washington, DC 20420

------------------------------

Common Wealth of Virginia, et al
            Amicus Curiae

Kevin M. Gallagher, Esq., Attorney
Direct: 804-786-2071
[COR LD NTC]
Firm: 804-786-2071
Office of the Attorney General, Commonwealth of Virginia
2O2 North 9th Street
Richmond, VA 23219

Paul H. Yoon; Elizabeth F. Yoon; Toby G. Doran; Thomas J. Doran,

      Petitioners

v.

Douglas A. Collins, Secretary of Veterans Affairs,

      Respondent

-------------------------------

Common Wealth of Virginia, et al,

      Amicus Curiae

| | | |
|---|---|---|
| 01/10/2025 | 🔒 0 pg, 0 KB | Petition for extraordinary relief (SRS) |
| 01/10/2025 | 1 pg, 21.19 KB | Appearance of Attorney(s) Timothy L McHugh for party(s) Petitioner Thomas J. Doran Petitioner Elizabeth F. Yoon Petitioner Paul H. Yoon Petitioner Toby G. Doran, in case 25-255 as lead counsel (SRS) |
| 01/10/2025 | 1 pg, 21.21 KB | Appearance of Attorney(s) Lauren Miller for party(s) Petitioner Thomas J. Doran Petitioner Elizabeth F. Yoon Petitioner Paul H. Yoon Petitioner Toby G. Doran, in case 25-255 as co-counsel (SRS) |
| 01/10/2025 | 1 pg, 21.25 KB | Appearance of Attorney(s) David J DePippo for party(s) Petitioner Thomas J. Doran Petitioner Elizabeth F. Yoon Petitioner Paul H. Yoon Petitioner Toby G. Doran, in case 25-255 as co-counsel (SRS) |
| 01/10/2025 | 1 pg, 21.22 KB | Appearance of Attorney(s) William Harold Smith III for party(s) Petitioner Thomas J. Doran Petitioner Elizabeth F. Yoon Petitioner Paul H. Yoon Petitioner Toby G. Doran, in case 25-255 as co-counsel (SRS) |
| 01/10/2025 | 🔒 0 pg, 0 KB | Fee Agreement as to Paul H. Yoon and Elizabeth F. Yoon (SRS) |
| 01/10/2025 | 🔒 0 pg, 0 KB | Fee Agreement as to Toby G. Doran and Thomas J. Doran (SRS) |
| 01/24/2025 | | (p) USCAVC filing fee $50 from Petitioner-Toby G. Doran (SRS) |
| 01/27/2025 | 🔒 0 pg, 0 KB | Notice of Docketing for petition for extraordinary relief (SRS) |
| 01/27/2025 | | Assigned case to Judge Jaquith (PTD) |
| 03/07/2025 | 2 pg, 226.96 KB | ORDERED that the Secretary, within 30 days after the date of this order, file a response to the petition addressing the specific allegations contained therein and providing any documentation necessary for the Court to resolve this matter. (JAQUITH) (DNF) |
| 03/10/2025 | 1 pg, 9.39 KB | Appearance of Mark J Hamel for Douglas A. Collins, in case 25-255 as lead counsel (MJH) |
| 03/20/2025 | 3 pg, 210.88 KB | Motion of Kevin Gallagher to appear before Court under Rule 46(b)(1)(G) (SL) |
| 03/25/2025 | 3 pg, 550.06 KB | Clerk's stamp order granting Kevin Gallagher's motion to appear before the Court under Rule 46(b)(1)(G) (TMW) (SL) |
| 03/25/2025 | 34 pg, 1.16 MB | Motion leave to file amici curiae brief in support of petitioners (SL) |
| 03/25/2025 | 24 pg, 496.21 KB | RECEIVED: Amici Curiae Brief (AF) |
| 03/25/2025 | 1 pg, 70.82 KB | Appearance of Mark M. McNabb for Douglas A. Collins, in case 25-255 as lead counsel (MMM) |
| 04/03/2025 | 2 pg, 206.33 KB | Motion of Respondent to ext time to file response to Court Order until 04/14/2025. (MJH) |
| 04/09/2025 | 9 pg, 1.21 MB | Judge's stamp order granting motion for leave to file Amici Curiae Brief (JAQUITH) (AF) |
| 04/09/2025 | 1 pg, 298.22 KB | Appearance of Attorney(s) Kevin M Gallagher for party(s) Amicus Curiae Common Wealth of Virginia, et al, in case 25-255 as lead counsel (SL) |
| 04/09/2025 | 24 pg, 496.21 KB | Amicus Curiae's brief (AF) |
| 04/09/2025 | 2 pg, 216.62 KB | Judge's stamp order granting Respondent's motion to extend time to file response to Court Order until 4/14/25 (JAQUITH) (AF) |
| 04/14/2025 | 2 pg, 90.47 KB | Motion of Respondent to ext time to file response to 3/7/25, Court order until 04/21/2025. (MJH) |
| 04/15/2025 | 2 pg, 208.21 KB | Judge's stamp order granting Respondent's motion to extend time to file response to Court order until 4/21/25 (JAQUITH) (AF) |
| 04/21/2025 | 2 pg, 80.27 KB | Motion of Respondent to ext time to file response to Court Order until 04/28/2025. (MMM) |

Case: 25-1839   Document: 26     Filed: 06/13/2025

| 04/22/2025 | ☐ 🖹 2 pg, 162.69 KB | Judge's stamp order granting Respondent's mot to extend time to file response to 3/7/25, Court order until 4/28/25 (JAQUITH) (AF) |
| 04/28/2025 | ☐ 🖹 1 pg, 32.72 KB | Appearance of as co-counsel (MWM) |
| 04/28/2025 | ☐ 🖹 20 pg, 671.82 KB | Response by Respondent *to Petition for Extraordinary Relief and Court Order* (MJH) |
| 05/05/2025 | ☐ 🖹 86 pg, 1.37 MB | Motion of Petitioners for leave to file *Proposed Reply in Support of Petition for Extraordinary Relief* (TLM) |
| 05/06/2025 | ☐ 🖹 86 pg, 18.64 MB | Judge's stamp order granting Petitioners' Unopposed Motion for Leave to File Proposed Reply in Support of Their Petition For Extraordinary Relief (JAQUITH) (AF) |
| 05/16/2025 | ☐ 🖹 22 pg, 283.65 KB | Petitioner's Notice of Supplemental Authority under Rule 30(b)--[Edited 05/19/2025 by AF] (TLM) |
| 05/23/2025 | ☐ 🖹 4 pg, 535.68 KB | Petitioners Notice of Supplemental Authority (TLM) |
| 06/02/2025 | ☐ 🖹 2 pg, 130.46 KB | Notice or other pleading by Petitioners (TLM) |
| 06/05/2025 | ☐ 🖹 2 pg, 71.6 KB | Petitioner's Notice of Appeal to the U.S. Court of Appeals for the Federal Circuit--[Edited 06/06/2025 by AF] (TLM) |
| 06/06/2025 | ☐ 🖹 4 pg, 276.45 KB | RECEIVED: Notice of Docketing from the U.S. Court of Appeals for the Federal Circuit dated 6/6/2025; (25-1839) (DNF) |
| 06/06/2025 | ☐ | (p) RECEIVED: U.S. Court of Appeals for the Federal Circuit filing fee ($600) (SRS) |
| 06/06/2025 | ☐ 🖹 2 pg, 116.11 KB | RECEIVED: Order from the U.S. Court of Appeals for the Federal Circuit dated 6/6/25; IT IS ORDERED THAT: The Secretary of Veterans Affairs is directed to respond to the motion no later than seven days from the date of en-try of this order. Among other issues he may wish to dis-cuss, the Secretary's response should address this court's jurisdiction under both 28 U.S.C. § 1651 and 38 U.S.C. § 7292(a). Any reply in support of the motion is due no later than three days after service of the Secretary's re-sponse. (25-1839) COS: 6/9/25 (AF) |

Clear All

● **Documents and Docket Summary**
○ **Documents Only**

☐ **Include Page Numbers**

**Selected Pages:** 0    **Selected Size:** 0 KB    **(Max: 10 MB)**
**Totals reflect accessible documents only and do not include unauthorized restricted documents.**

View Selected

# IN THE UNITED STATES COURT OF APPEALS
# FOR VETERANS CLAIMS

No. _____

Paul H. Yoon, Elizabeth F. Yoon, Toby G. Doran, and Thomas J. Doran,

Petitioners,

v.

Denis McDonough, Secretary of Veterans Affairs,

Respondent.

## PETITION FOR
## EXTRAORDINARY RELIEF

### *RELIEF REQUESTED BY FEBRUARY 10, 2025*

Timothy L. McHugh
William Harold Smith III
Lauren H. Miller
Troutman Pepper Hamilton Sanders LLP
1001 Haxall Point
Richmond, VA 23219
(804) 697-1210

David J. DePippo
Dominion Energy Services, Inc.
Riverside 5
120 Tredegar Street
Richmond, VA 23219
(804) 418-2421

*Attorneys for Petitioners*

# Table Of Contents

Preliminary Statement.................................................................................................1

Background ................................................................................................................4

    I.    Veterans Educational Assistance Statutory And Regulatory Scheme.........................4

    A.    The Montgomery GI Bill...........................................................................4

    B.    The Post-9/11 GI Bill .................................................................................5

    II.    *Rudisill v. McDonough* Holds That Veterans Are Entitled To All Benefits Earned Through Sufficiently Lengthy Service ...................................................6

    III.    Petitioners' Lengthy Service And The Secretary's Administrative Actions ...............7

    A.    Lieutenant Colonel (Ret.) Paul Yoon And His Dependent-Daughter Elizabeth Yoon ...............................................................................................7

    B.    Colonel (Ret.) Toby Doran And His Dependent-Son Thomas Doran......................9

Argument.................................................................................................................11

    I.    Jurisdiction Is Proper Under The All Writs Act .........................................11

    II.    Petitioners Meet The Requirements For Injunctive Relief ...........................12

    A.    Petitioners Are Likely To Succeed On The Merits Of Their Claim. .......12

    B.    Petitioners Will Suffer Irreparable Harm Absent Injunctive Relief.........15

    C.    An Injunction Will Have Minimal Impact On The Secretary And Will Immediately Benefit Petitioners And Other Veterans' Benefits Claimants...................17

Appendix ....................................................................................................................i

i

## Table Of Authorities

**Cases**

*Areniego v. Shulkin*, 2018 U.S. App. Vet. Claims LEXIS 2772 (Vet. App. 2018) ......................18

*Burris v. Wilkie*, 888 F.3d 1352 (Fed. Cir. 2018) ..............................................................12

*FTC v. Dean Foods Co.*, 384 U.S. 597 (1966) ....................................................................12

*Green v. Brown*, 10 Vet. App. 111 (1997) ..........................................................................17

*Hambidge v. McDonough*, 37 Vet. App. 155 (2024) ....................................................14, 21

*Nken v. Holder*, 556 U.S. 418 (2009) .........................................................................13, 20

*Perkins v. McDonough*, Vet App. No. 24-6515 ........................................................1, 2, 3, 16

*Ribaudo v. Nicholson*, 21 Vet. App. 137 (2007) ...................................................13, 18, 21

*Rudisill v. McDonough*, 34 Vet. App. 176 (2021) ..........................................................passim

*Rudisill v. McDonough*, 601 U.S. 294 (2024) .................................................................passim

*Rudisill v. McDonough*, No. 16-4134, 2024 WL 3554912 (Vet. App. July 27, 2024) ..................20

*Smith v. Gober*, 14 Vet App. 227 (2000) ...........................................................................19

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ......................................................13

*Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983) .......................................13

**Statutes**

10 U.S.C. § 16163 ............................................................................................................5

38 U.S.C. § 3001 .............................................................................................................4

38 U.S.C. § 3011(a) ...................................................................................................passim

38 U.S.C. § 3011(b) ........................................................................................................16

38 U.S.C. § 3013(a)(1) ...................................................................................................4, 5

38 U.S.C. § 3014(a) ..........................................................................................................4

38 U.S.C. § 3301 note .......................................................................................................5

38 U.S.C. § 3311 ..............................................................................................................6

38 U.S.C. § 3311(a) .........................................................................................................17

38 U.S.C. § 3311(b) .........................................................................................................17

38 U.S.C. § 3312 .........................................................................................................6, 15

38 U.S.C. § 3313 ..............................................................................................................6

38 U.S.C. § 3313(c) .................................................................................5

38 U.S.C. § 3316 ......................................................................................5

38 U.S.C. § 3317 ......................................................................................5

38 U.S.C. § 3318 ......................................................................................5

38 U.S.C. § 3319 ......................................................................................2

38 U.S.C. § 3319(h)(5)(A) ......................................................................21

38 U.S.C. § 3322(d) .................................................................................7

38 U.S.C. § 3327 ..................................................................................6, 7

38 U.S.C. § 3327(a) ...............................................................................15

38 U.S.C. § 3327(d) ...............................................................................15

38 U.S.C. § 3327(d)(1) .............................................................................6

38 U.S.C. § 3327(d)(2)(A) .......................................................................6

## Regulations

38 C.F.R. § 21.9570 .................................................................................8

38 C.F.R. § 21.9640(b) ............................................................................5

## Public Laws

Pub. L. No. 78-346 §§ 400–505, 58 Stat. 284, 287–93 ..............................4

**Preliminary Statement**

Petitioners Paul H. Yoon and Elizabeth F. Yoon (together, the "Yoons") and Toby G. Doran and Thomas J. Doran (together, the "Dorans") (Yoons and Dorans, together the "Petitioners") submit this joint petition for extraordinary relief under Rule 21, the All Writs Act, and the Court's inherent authority requesting an injunction to prevent irreparable harm. Petitioners are currently paying, or will imminently be forced to pay, out of pocket for college tuition and school costs, as well as are losing, or will shortly be losing, out on thousands of dollars in education school benefit payments because the Secretary is denying them their full monthly GI Bill entitlements, contrary to plain statutory language, as interpreted by the Supreme Court last term in the landmark case, *Rudisill v. McDonough*, 601 U.S. 294 (2024). The Petitioners require those benefits for active educational programs *now*, during the pendency of what will inevitably be lengthy litigation (as the *Rudisill* saga, ongoing since 2015, illustrates), not following its conclusion. These are not isolated cases: countless other intended beneficiaries of *Rudisill* are being actively denied benefits by the Secretary, as seen in *Perkins v. McDonough*, Vet App. No. 24-6515 (expedited by the Court under Rule 47), and the Secretary's recent announcement of the unilateral readjudication of some *660,000* closed cases. The Court's intervention is needed urgently.

In *Rudisill*, the Supreme Court held that if a veteran serves long enough to establish entitlement to both Montgomery and Post-9/11 benefits separately, he or she is entitled to both benefits and may use them up to Congress' cumulative 48-month use cap. 601 U.S. at 314. The Supreme Court was *very* clear: GI Bill entitlement analysis focuses on veterans' "lengthy" service rather than, as the Secretary argued in that case, this or that "period" of

1

service per se. *Id.* at 306. As detailed below, both Paul Yoon and Toby Doran each served for *decades* as commissioned officers, easily establishing entitlement to both benefits separately. Each also served long enough to, and properly did, transfer their entitlements to Post-9/11 benefits to their dependent children under 38 U.S.C. § 3319 and to complete the extended service obligations owed to the Department of Defense.

Yet, the Secretary has denied Petitioners their full suite of earned benefits based on an invented, nonsensical break-in-service or discharge/reenlistment requirement that finds no support in any statute or *Rudisill*—the same interpretation he defends in *Perkins* before this Court. *See* App. at 17, 26, 28, 30, 32–33 (Yoon Post-9/11 award decisions); App. at 329–30, 332, 334–36 (Doran Post-9/11 award decisions). The result of this manufactured requirement is that, regardless of how many years a veteran serves, in order to receive full benefits under both the Montgomery and Post-9/11 GI Bills, veterans must arbitrarily have a break in service at some point in their career, such as a discharge followed by a reenlistment. *See* Br. of Appellee at 9–10, *Perkins*, Vet App. No. 24-6515 (Dec. 2, 2024) ("[Perkins] has one 'period of service.' . . . [Perkin's] single period of service could satisfy the minimum requirements for full benefits under *either* the Montgomery *or* Post-9/11 GI Bills because of the duration of her service.") (emphasis added). The problems with this atextual interpretation, which the Secretary has never advanced in the GI Bills' 80-year history and features nowhere in the Supreme Court's interpretation of the statutory scheme, abound, but the Yoons and the Dorans are apt examples of its flaws. Officers serve continuously and cannot "reenlist" to manufacture the breaks in service necessary for the Secretary's absurd position to possibly work. *See* Appellant's Reply Br. at 6–7, *Perkins*, Vet App. No. 24-6515 (Dec. 12, 2024) (noting

2

officers cannot reenlist because they are commissioned by the President and serve indefinitely until retirement or separation).

Without this Court's intervention, Petitioners will suffer significant harms, including losses of tens of thousands of dollars in benefits they are entitled to and possibly irrevocable life choices. Elizabeth Yoon, currently a 1L at Harvard Law School, will exhaust her allotment of Post-9/11 benefits by roughly May 2025 and she and her family are already altering her life plans based on the unavailability of VA GI Bill benefits. Thomas Doran, an Oregon State University student, has exhausted the limited Post-9/11 benefits the Secretary allotted to him, and he and his family will be forced to pay out of pocket for his educational expenses until relief is granted to them. Moreover, Petitioners are unaware of any mechanism to allow Post-9/11 benefits to be awarded retroactively and the Secretary's consistently held position, supported by case law, is that money damages are unavailable from the VA. An injunction now, therefore, is warranted to protect not only Petitioners, but the countless families and individual veterans from the over 1.7 million-large *Rudisill* cohort to whom the Secretary is applying his misguided, veteran-unfriendly, arbitrary statutory interpretation. *See* VA Press Release (Jan. 3, 2025), https://perma.cc/T3DC-4HMA (in announcing the VA's *partial* implementation of *Rudisill*, finally conceding even that half-measure alone "could impact as many as 1.04 million Veterans and beneficiaries").

Given the exigency of this case and need for its resolution before Petitioners incur significant, unrecoverable costs that could have been paid by Post-9/11 benefits, Petitioners respectfully state that should this Court not grant the requested relief by **February 10, 2025,**

3

they will be forced to petition the U.S. Court of Appeals for the Federal Circuit or U.S. Supreme Court for appropriate relief under the All Writs Act.

## Background

### I.    Veterans Educational Assistance Statutory And Regulatory Scheme

Congress has long provided veterans with a host of educational benefits to reward them for their service and help them readjust to civilian life. During World War II, Congress enacted the first such "GI Bill"—the Serviceman's Readjustment Act of 1944—which provided educational benefits in the form of payment of tuition and certain related expenses. Pub. L. No. 78-346 §§ 400–505, 58 Stat. 284, 287–93. Since, Congress has enacted additional GI Bills to assist veterans. Although differing in the precise benefits provided, most GI Bills have three similarities: each 1) requires that a veteran have a certain amount of qualifying service to become entitled to benefits; 2) provides 36 months of benefits; and 3) limits usage to a total of 48 months if the veteran has benefits under multiple GI Bills. *Rudisill*, 601 U.S. at 299.

#### A.  The Montgomery GI Bill

The Montgomery GI Bill, 38 U.S.C. § 3001 *et seq.*, was the sole education benefit Congress provided to veterans for active-duty service from 1985 to 2009. Designed to reward peacetime service, the Montgomery GI Bill provides "basic educational assistance" in the form of a modest, fixed monthly stipend for up to 36 months, that does not cover the full cost of a veteran's education. *Id.* §§ 3011(a), 3013(a)(1), 3014(a). Veterans are "entitled to 36 months of [Montgomery] educational benefits" if they: (1) begin active-duty service between July 1, 1985, and September 30, 2030; (2) serve an "obligated period of active duty" of two or three

4

"continuous" years (depending on the enlistment contract); (3) complete secondary school; and (4) are discharged honorably or continue serving. *Id.* §§ 3011(a)(1)-(3), 3013(a)(1).

## B. The Post-9/11 GI Bill

Congress enacted the Post-9/11 GI Bill in June 2008, with an effective date of August 1, 2009, 10 U.S.C. § 16163 note, in recognition of the "especially arduous" active-duty service required since the September 11, 2001, terrorist attacks, 38 U.S.C. § 3301 note. Congress concluded that the Montgomery GI Bill was "outmoded and designed for peacetime service" and that it was necessary to provide those who served "after September 11, 2001, with enhanced educational assistance benefits that are worthy of such service[.]" *Id.* Veterans are "entitled to" 36 months of the maximum percentage of Post-9/11 benefits, if they "serve[ ] an aggregate of at least 36 months on active duty," beginning "on or after September 11, 2001." *Id.* §§ 3311(a)–(b)(1)(A), 3312(a) 3313(c)(1).

Given that the Post-9/11 GI Bill was enacted in 2008, but covered service that began on September 11, 2001, many veterans who were retroactively entitled to Post-9/11 benefits had already been funneled into the Montgomery program. To address this issue (as well as future exchange scenarios), Congress created a mechanism in § 3327 that allowed those veterans with sufficient qualifying service for only one educational benefit program to swap their Montgomery benefits for Post-9/11 benefits. *Rudisill*, 601 U.S. at 302. Under § 3327, an individual who is entitled to both Montgomery and Post-9/11 benefits "based on the same (overlapping) period of service can elect to exchange the Montgomery benefits he has received for the Post-9/11 benefits that he wants." *Rudisill*, 601 U.S. at 302. Once an individual makes a § 3327(a) election, he is "entitled to [Post-9/11 benefits], instead of [Montgomery benefits]."

5

*Id.* at 303 (citing 38 U.S.C. § 3327(d)(1)). "[I]f the individual has already used some Montgomery benefits when he makes that swap, the new entitlement is not a full 36 months of Post-9/11 benefits." *Id.* Rather, under § 3327(d)(2) the new entitlement is limited to "the number of months of unused entitlement . . . under [the Montgomery GI Bill], as of the date of the election." *Id.* (citing § 3327(d)(2)(A)).

## II. *Rudisill v. McDonough* Holds That Veterans Are Entitled To All Benefits Earned Through Sufficiently Lengthy Service

In *Rudisill*, the Supreme Court decisively determined that veterans whose "lengthy service conferred two separate entitlements" to Montgomery and Post-9/11 benefits can "use their benefits[ ] in any order, up to [the] aggregate 48-month cap [under 38 U.S.C. § 3695]." 601 U.S. at 305–06, 314. In so holding, the Supreme Court explained that, under both programs, once the minimum lengths of qualifying service are rendered, veterans are "entitled" to 36 months of benefits under each program. *Id.* at 305. Although Mr. Rudisill happened to have a break in his service in earning his entitlement to 36 months of Montgomery benefits and 36 months of Post-9/11 benefits, the Court stressed that the entitlement analysis "does *not* focus on [a veteran's] periods of service . . . [but r]ather" on the fact that a veteran's "lengthy service confer[s] two separate entitlements." *Id.* at 306 (emphasis added).

The Court's decision thereafter unequivocally held that "[v]eterans who separately accrue benefits under both the Montgomery and Post-9/11 GI Bills are entitled to both benefits. Neither § 3322(d) nor § 3327 restrict veterans with two separate entitlements who simply seek to use either one." *Id.* at 314. Rather, veterans "may use [their] benefits, in any order, up to § 3695's 48-month aggregate-benefits cap," consistent with the plain language of the statutory scheme discussed above. *Id.*

6

### III.     Petitioners' Lengthy Service And The Secretary's Administrative Actions

#### A.  Lieutenant Colonel (Ret.) Paul Yoon And His Dependent-Daughter Elizabeth Yoon

Petitioner Paul Yoon served honorably in the U.S. Army for nearly 24 years. App. at 119. He became an officer in the Army in 1998 and served in various capacities as an Army chaplain until 2021. App. at 118. During that time, Mr. Yoon was deployed to Afghanistan, Iraq, and Kosovo. *Id.* He received decorations that include the Bronze Star, Meritorious Service Medal, Army Commendation Medal, and Air Assault Badge. *Id.*

Based on the first three years (1998–2001) of his service, Mr. Yoon became entitled to 36 months of Montgomery benefits, and eventually used a little over 34 months to obtain an MBA and Doctor of Ministry. App. at 90, 120–21. Given 38 U.S.C. § 3695's 48-month aggregate cap, this meant that he could use up to 14 months of benefits under any other veterans' educational benefits programs to which he might thereafter become entitled.

Planning for his daughters' futures, in 2017, Mr. Yoon requested permission from the Army to "transfer his unused entitlement to Post-9/11 GI Bill benefits" to his dependents. App. at 118. On August 23, 2017, the Army and Department of Defense approved the transfer under 38 U.S.C. § 3319, so long as Mr. Yoon served until August 21, 2021. App. at 119.[1] Based on this approval, Mr. Yoon chose to pay for his daughters' undergraduate educations out of

---

[1] Those agencies mistakenly told Mr. Yoon that he could transfer up to 36 months of Post-9/11 benefits to his dependents, apparently unaware of § 3695's 48-month cap and/or Mr. Yoon's prior Montgomery usage. App. at 119. Given that Mr. Yoon had already used 34 months of Montgomery benefits, however, Mr. Yoon now understands that he only had 14 months of Post-9/11 benefits he could effectively transfer. *Id.*; *see* 38 C.F.R. § 21.9570 ("A transferor may not transfer an amount of entitlement that is greater than the entitlement he or she has available at the time of transfer.").

pocket, saving the transferred Post-9/11 benefits for his daughter Elizabeth's anticipated graduate school attendance. App. at 120.

Petitioner Elizabeth Yoon was accepted into Harvard Law School after completing undergraduate studies at Northwestern University, and started August 2024. App. at 119. Her attendance at Harvard Law School is estimated to cost $116,000 annually, plus any interest on any loans. App. at 122. She planned to fund her attendance with the assistance of the transferred Post-9/11 benefits. App. at 120. She intended to use the 14 months of benefits right away to give herself more time to save money for later semesters. App. at 121.

In April 2024, after the Yoons contacted the VA to initiate Elizabeth's benefits, the VA limited her entitlement to Post-9/11 benefits to the less than 2 months Mr. Yoon had in remaining Montgomery benefits. App. at 17, 120. It reasoned that Mr. Yoon's nearly 24 years of service was a "single" period of service, requiring him to either exhaust or forfeit his Montgomery benefits before obtaining Post-9/11 benefits. App. at 17, 26, 28, 30, 32–33.

The impact of the VA's actions on the Yoons has been substantial. When Elizabeth started law school, her family had to "unexpectedly and prematurely use [their] personal savings to cover the costs." App. at 121. Mr. Yoon and his wife have already spent upwards of $20,000 on Elizabeth's tuition and other law school expenses. *Id.* Elizabeth spent approximately $37,000 last semester—emptying the modest savings she had accumulated through a work-study program at Northwestern University, "which she planned to [use to] subsidize her attendance" over the next three years at Harvard Law School. *Id.*

The Yoons have appealed the regional office's decision to the Board, App. at 3–36, 142–72, which the Board has only recently, *finally* accepted for filing, App. at 279, 280, 294,

and filed motions for advancement to avoid irreparable harm, App. at 37–139, 176–278. Since filing their appeals, Elizabeth notified her school of her intent to begin utilizing her available Post-9/11 benefits in the Winter term beginning January 6, 2025, prompting the regional office to grant her a routine regulatory extension of her limited Post-9/11 GI Bill entitlement to allow her to complete her Spring 2025 semester, but permitting no further benefits. *See* App. at 305 (Education Benefit Eligibility decision). Without the Court's intervention, Elizabeth's Post-9/11 benefits will be exhausted by approximately May 2025, despite the fact that Mr. Yoon and Elizabeth are entitled to approximately 14 months of such benefits.

## B. Colonel (Ret.) Toby Doran And His Dependent-Son Thomas Doran

Petitioner Toby Doran served honorably in the U.S. Air Force for more than 27 years. App. at 380. He first enlisted in August 1987 and served until September 1991, when he was discharged honorably. He reentered the Air Force as an officer in July 1995 and served until his retirement in December 2018. *Id.* During his service, Mr. Doran was deployed to the Mediterranean, Southwest Asia, and Iraq. *Id.* And he received awards that include the Legion of Merit, the Meritorious Service Medal with six oak leaf clusters, the Air Medal, the Aerial Achievement Medal with one oak leaf cluster, the Air Force Commendation Medal, and the Air Force Achievement Medal with one oak leaf cluster. *Id.*

Based on Mr. Doran's first four years (1987–1991) of service, he became entitled to 36 months of Montgomery benefits. *Id.* In 1991, he was honorably discharged from the Air Force to accept an ROTC scholarship, and he subsequently enrolled at Oregon State University. *Id.* While enrolled, he used 33 months, 25 days of Montgomery benefits to obtain a Bachelor of Science in Mechanical Engineering. *Id.* Given 38 U.S.C. § 3695's 48-month aggregate cap,

which meant he could use up to 14 months, 5 days of benefits under any other veterans' educational benefits programs to which he might thereafter become entitled.

Planning for his children's futures, in 2012, Mr. Doran sought to transfer his Post-9/11 benefits to his dependent children, which was approved by the Department of Defense on October 22, 2012. App. at 371, 381. In 2016, the VA informed him that it recognized and effectuated that transfer. *Id.*

Mr. Doran's son, Petitioner Thomas J. Doran, is a mechanical engineering student at Oregon State University. App. at 381. Based on current calculations, Thomas' attendance at Oregon State University is estimated to cost $32,502 annually, plus any interest that must be repaid on loans obtained. App. at 382.

Mr. Doran planned to fund Thomas' university attendance with the assistance of transferred Post-9/11 benefits. However, in January 2016, after the Dorans applied to utilize Mr. Doran's Post-9/11 benefits, the VA limited the Dorans' entitlement to those benefits to the amount of Mr. Doran's remaining, unused Montgomery entitlement, which amounted to 2 months and 5 days. App. at 381, 412. The VA reasoned that Mr. Doran's decision to transfer Post-9/11 benefits to Thomas automatically relinquished Mr. Doran's eligibility under the Montgomery GI Bill and limited his entitlement to Post-9/11 benefits under the VA's pre-*Rudisill* policies implementing 38 U.S.C. §§ 3322(d) and 3327. *See* App. at 412, 381.

After the Supreme Court's decision in *Rudisill*, Mr. Doran reapplied for Post-9/11 benefits. On November 8, 2024, the VA informed Mr. Doran that his nearly 27 years of service was still, nevertheless, "one period of qualifying active duty service" for purposes of GI Bill benefits, which required him to either exhaust or forfeit his Montgomery benefits before he

could obtain Post-9/11 benefits. App. 329–30, 332, 334–36 (suggesting a *further* manufactured requirement that multiple *post-9/11* periods are necessary).

The impact of the VA's actions on the Dorans has been substantial. Since Thomas started university in 2022, the Dorans have had to "los[e] income, savings, and earnings on investment that must be directed to pay" the costs of Thomas' education. App. at 383. Mr. Doran has already spent upwards of $45,300 on Thomas' tuition and other expenses, and estimates bearing further costs of $32,502 annually in the future. *Id.*

The Dorans have appealed the regional office's latest decisions to the Board, App. at 316–44, 395–419, and filed motions for advancement to avoid irreparable harm, App. at 347–90, 423–66. Thomas' current allotment of Post-9/11 benefits are already exhausted, despite the fact that the Dorans are entitled to approximately 14 months of such benefits. The Court's immediate intervention is needed to avoid further harm to the Dorans.

## Argument

### I.    Jurisdiction Is Proper Under The All Writs Act

The Court has jurisdiction under 28 U.S.C. § 1651; *see FTC v. Dean Foods Co.*, 384 U.S. 597, 603–04 (1966); *Rudisill v. McDonough*, 34 Vet. App. 176, 181 (2021).

The Court's authority to issue injunctions is clear. *Burris v. Wilkie*, 888 F.3d 1352, 1361 (Fed. Cir. 2018) (this Court can grant certain forms of non-substantive equitable relief necessary to enable the court to carry out its statutory grant of jurisdiction); *Rudisill*, 34 Vet. App. at 181; *Ribaudo v. Nicholson*, 21 Vet. App. 137 (2007) (*en banc*). The Court may issue a writ under the All Writs Act to prevent irreparable injury. *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983).

11

## II. Petitioners Meet The Requirements For Injunctive Relief

Petitioners seek an All Writs Act injunction. Like a traditional injunction, such injunctions prevent irreparable harm that cannot be remedied on appeal. *Zenith Radio*, 710 F.2d at 809. Here, an injunction is necessary to preserve Petitioners' rights and prevent irreparable harm pending appeal.

To determine whether to grant an injunction, courts consider these factors: (1) petitioner's likelihood of success on the merits; (2) the likelihood that the petitioner will suffer irreparable harm; (3) the balance of equities; and (4) the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Rudisill*, 34 Vet. App. at 184 n. 28 (applying *Winter*). The third and fourth factors "merge when the Government is" opposing. *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Rudisill*, 34 Vet. App. at 186 n. 38.[2] When weighing these factors, the Court can use a "sliding scale" approach where a strong showing on some factors balances a weaker showing on others. *Rudisill*, 34 Vet. App. at 186–87 (Bartley, J., concurring) (citation omitted).

### A. Petitioners Are Likely To Succeed On The Merits Of Their Claim.

Petitioners are very likely to succeeds on the merits. In short, Petitioners have separately qualifying service under the Montgomery and Post-9/11 programs and, thus, are

---

[2] This Court recently created an unprecedented fifth factor to use when determining whether injunctive relief is appropriate: "a lack of adequate alternative means to obtain the desired relief." *Hambidge v. McDonough*, 37 Vet. App. 155, 159 (2024). *Hambidge* is on appeal to the Federal Circuit, where the Secretary has taken the position that the correct standard for injunctive relief is *Winter.* Resp't-Appellee's Br. at 15 n. 2, *Hambidge*, Fed. Cir. No. 24-1670 (Sept. 20, 2024). Petitioners agree. Moreover, because Petitioners here unequivocally are *not* seeking a writ of mandamus (the test for which the Court drew its fifth *Hambidge* factor from) and *Hambidge* did not *expressly* overrule the *Rudisill* standard for injunctive relief (which follows *Winter*), there is every reason for the Court here to follow *Rudisill.*

12

entitled to up to 48 months of GI Bill benefits under the statutory scheme and *Rudisill*. The Secretary's invented "break in service" requirement is without merit.

Veterans who meet the minimum requirements for Montgomery and Post-9/11 benefits are "entitled to [36 months] of basic educational assistance" under each program. 38 U.S.C. §§ 3011(a)(3); 3312(a). Veterans with sufficient service for benefits under only one program, however (*e.g.*, serving just three years after September 11, 2001), are entitled to only 36 months of total benefits under one program or the other. If these veterans want to utilize their entitlement to Post-9/11 rather than Montgomery benefits, they must "elect" to do so under § 3327. *Rudisill*, 601 U.S. at 302; 38 U.S.C. § 3322(h)(1). "Making a § 3327(a) election effects a swap by operation of § 3327(d)," and is irrevocable. *Rudisill*, 601 at 303. If the veteran swaps after having "used some Montgomery benefits," "his new entitlement [is] capped at the number of months of unused entitlement," up to 36 months. *Id.* at 303. In contrast, veterans who provided sufficiently "lengthy service"—that is, they served long enough to earn up to 36 months of Montgomery benefits *and* 36 months of Post-9/11 benefits, *id.* at 306, 314—are entitled to a combined total of 48 months of benefits both programs. *Id.* at 313; 38 U.S.C. § 3695(a). These veterans do not need to use the § 3327 election mechanism. *Rudisill*, 601 U.S. at 305. Instead, these veterans are limited only by the fact that they can receive just one benefit at a time and are capped at a total of 48 months of benefits. *Id.* at 310–11, 314.

Mr. Yoon's and Mr. Doran's decades of "lengthy service" undoubtedly separately entitles them to benefits under both the Montgomery and Post-9/11 programs, just like the petitioner in *Rudisill*. As to the Montgomery benefits, Mr. Yoon (1) joined the U.S. Army in 1998; (2) served an "obligated period of active duty" of three "continuous" years; (3)

13

completed secondary school (even obtaining his MBA); and, (4) continued serving (he also was honorably discharged many years later in 2021), 38 U.S.C. § 3011 (a)(1)(A)(i); App. at 118, 120–21, 119. He also made the necessary monetary contributions, *id.* § 3011(b)(1), a fact that the VA does not dispute. App. at 19 (Certificate of Eligibility showing Montgomery entitlement). Mr. Yoon also qualifies for the Post-9/11 GI Bill because he "serve[d] an aggregate of at least 36 months on active duty," beginning "on or after September 11, 2001" (2001–2021). 38 U.S.C. § 3311(a)–(b)(1); App. at 120.

Mr. Doran also separately established entitlement to two benefit programs. He established Montgomery entitlement by: (1) joining the U.S. Air Force in 1987; (2) serving an obligated period of active duty of at least three continuous years (1991); (3) completing secondary school; and being honorably discharged. App. at 381. Mr. Doran also made the necessary monetary contributions into the Montgomery GI Bill. *Id.* Next, Mr. Doran established Post-9/11 entitlement by serving for well over 36 months on active duty after September 11, 2001 (2001–2018). *Id.*

It is clear error for the Secretary to deny Petitioners their full suite of educational benefits on these facts under the statutory scheme and *Rudisill.* The Secretary's conclusions that Petitioners' many decades of service constitute "single" periods of service, respectively, and therefore each has only one entitlement to benefits, App. at 17, 26, 28, 30, 32–33; App. at 329–30, 332, 334–36, is likely to be reversed by this Court on appeal for all the reasons articulated by the appellant in *Perkins.*[3] *See* Appellant's Br., *Perkins,* Vet. App. No. 24-6515

---

[3] This is *extraordinarily* true for Mr. Doran, who *has* the Secretary's required "break in service," even if one period was entirely pre-9/11 and the other was entirely post-9/11.

14

(Nov 12, 2024); Appellant's Reply Br., *Perkins*, Vet. App. No. 24-6515 (Dec. 12, 2024). In short, nothing in the Montgomery or Post-9/11 GI Bill's entitlement provisions or *Rudisill* requires a veteran to have a break in service, including in the form of an in-service discharge and re-enlistment, to utilize his statutory "entitle[ments]." *See* 38 U.S.C. §§ 3011((a)(3), 3311(a). Importantly, the entitlement criteria for the Montgomery and Post-9/11 GI Bills contemplate that a veteran may be honorably discharged or continue serving to meet the statutes' temporal and other requirements. *Id.* §§ 3011(a)(3)(A)–(B), 3311(b)(1)(B). Thus, Congress clearly contemplated entitling veterans under both programs whether they did, or did not, have breaks in service. And the Supreme Court interpreted these programs just as they are written. *Rudisill*, 601 U.S. at 306 (total *length* of qualifying service is what matters to GI Bill entitlement analysis, not rigid "periods of service"). The VA's position has no support in the statute or *Rudisill*, and must be rejected; the VA cannot add to statutory entitlements a "requirement that Congress ha[s] not included." *Green v. Brown*, 10 Vet. App. 111, 118 (1997); *Gardner v. Brown*, 5 F.3d 1456, 1458 (Fed. Cir. 1993), *aff'd*, 513 U.S. 115 (1994)).

Accordingly, the likelihood of success prong weighs decidedly in Petitioners' favor.[4]

## B. Petitioners Will Suffer Irreparable Harm Absent Injunctive Relief

Should the Court fail to issue the requested relief, Petitioners will suffer irreparable harm. This factor is met if a petitioner demonstrates a significant risk that he or she will experience harm that cannot be adequately compensated after the fact by a remedial order. *See*

---

[4] Should the Court require further briefing on the Secretary's substantive interpretation or should the Secretary advance a different interpretation here than in *Perkins*, Petitioners respectfully request leave to file an expedited reply brief in support of this petition.

15

*Rudisill*, 34 Vet. App. at 185; *Ribaudo*, 21 Vet. App. at 142; *Areniego v. Shulkin*, 2018 U.S. App. Vet. Claims LEXIS 2772, at *21–22 (Vet. App. 2018). Petitioners have made such a showing.

Elizabeth Yoon began utilizing the limited months of Post-9/11 benefits the VA has granted her on January 6, 2025, when her Winter term began, App. at 301,[5] but will not complete her Harvard Law School program until May 2027. When her current allotment of benefits are exhausted sometime in approximately May 2025, she will immediately be at risk of missing out on a $4,638.00 monthly housing allowance, a $1,000 annual stipend for books, and having her tuition paid for. App. at 135. Thomas Doran has already exhausted the 2 months and 5 days of Post-9/11 benefits the VA allotted to him, so he is already missing out on the $2,241 monthly housing allowance, a $1,000 annual stipend for books, and having his tuition paid for to attend Oregon State University. App. at 382–83.

Every day the Secretary withholds Post-9/11 benefits Petitioners are plainly entitled to, they will be forced to use their hard-earned savings to replace them. Elizabeth will likely have to use any future summer earnings and take out approximately $200,000 in loans to reach law school graduation. App. at 136. Indeed, in the single semester where she did not utilize Post-9/11 benefits for fear they would not be available to her, Elizabeth emptied her savings— approximately $37,000 from undergraduate work-study savings—which were supposed to subsidize her living expenses over three years of law school. App. at 132. Mr. Yoon and his wife have spent $20,000 on Elizabeth's tuition and other law school expenses, which they will never get back. App. at 124. Similarly, Mr. Doran has spent $45,300 to date on Thomas' education at Oregon State University. App. at 383. Mr. Doran has diverted a substantial

---

[5] *See* https://perma.cc/V9KN-XGEL.

16

amount of his income to funding Thomas' education, and has used credit cards to pay his tuition. App. at 382. Without this Court's intervention, Mr. Doran will be forced to spend $34,102 on Thomas' education and related expenses between now and May 2026. App. at 383.

Petitioners are also unaware of any mechanism under the Post-9/11 GI Bill that allows this Court to order the Secretary to retroactively compensate them for any damages they will suffer if they cannot timely access the full suite of Post-9/11 benefits to which they are entitled. *See, e.g., Smith v. Gober*, 14 Vet App. 227, 231 (2000). Time is further of the essence due to the statutory time bar imposed to use Post-9/11 GI Bill transferred benefits by the age of 26 years. 38 U.S.C. § 3319(h)(5)(A). Elizabeth, for example, currently expects to graduate from Harvard in May 2027 (assuming she is not forced to suspend her schooling) and turns 26 in 2028, App. at 134, requiring resolution of this case now, not on the usual timeline for benefits appeals.

Moreover, because this case involves education, the harms to Petitioners are not merely financial, they concern the very "structuring" of Petitioners' lives. *See Rudisill*, 34 Vet. App. at 185. Elizabeth's education, for example, has been directly impacted and she has had to make difficult career choices based on the financial limitations imposed by the Secretary's actions, which constitute irreparable harm. *See id.*; App. at 133–34. Thomas may soon be forced to seek employment while completing his rigorous mechanical engineering degree, diverting necessary time and energy away from his academic pursuits. App. at 383.

Accordingly, the irreparable harm factor also weighs in favor of granting an injunction.

### C. An Injunction Will Have Minimal Impact On The Secretary And Will Immediately Benefit Petitioners And Other Veterans' Benefits Claimants

When the Government is the opposing party, the third and fourth injunctive factors— the balance of equities and where the public interest lies—"merge" and can be considered

17

jointly. *Nken*, 556 U.S. at 435. Without an injunction, Petitioners will be greatly harmed by being forced to pay nearly $250,000 in excess costs out-of-pocket and/or through loans. Conversely, if the Court issues an injunction, the impact on the Secretary is negligible. The VA has plentiful resources that allow it to provide educational benefits, which are already valued at billions of dollars annually. *See* VBA, 2023 Annual Benefits Report—Education at 156, *available at* https://perma.cc/T7UB-8V8R; *see also* VA Press Release, *supra* at 3 ("Since its inception [in 2009], the Post-9/11 GI Bill has paid over $143 billion").

Providing the benefits to Petitioners and others now, in full compliance with *Rudisill*, will place a minimal administrative burden on the Secretary. The Secretary need only issue benefits when requested to individuals as part of his pre-existing obligation to implement *Rudisill* correctly. *See, e.g., Rudisill v. McDonough*, No. 16-4134, 2024 WL 3554912 (Vet. App. July 27, 2024). The foundation is there, as the Secretary has already demonstrated. Since at least this Court's decision in *BO v. Wilkie*, 31 Vet. App. 321 (2019), the VA has been internally tracking all claimants potentially eligible under *Rudisill*, even though not awarding benefits to them. App. at 467 (copy of VA procedural advisory directing regional offices to process claims under pre-*BO* rules, even after this Court's denial of a stay was entered).[6] Most recently, the Secretary has begun unilaterally redetermining Post-9/11 benefits entitlements—the very situation the majority in *Hambidge*, 37 Vet. App. at 161–62, thought unthinkable—to apply his untenable break-in-service requirement to veterans, just as happened to the Dorans here; *see*

---

[6] This document was included in the record in *Perkins* (R. at 157). *Perkins* was appealed to the Board in 2020 on its "direct review" path and, despite a motion to advance on the Board's docket, *Perkins*, uncoincidentally, was only decided by the Board in 2024 after *Rudisill*.

*also* VA Press Release, *supra* at 3 (announcing readjudication of at least 660,000 earmarked claims).[7]

Conversely, the members of the public most likely impacted by an injunction, *see Ribaudo*, 21 Vet. App. at 143–44, are the numerous veterans and beneficiaries who qualify for education benefits under both the Montgomery and Post-9/11 GI Bills. This includes many of the 660,000 veterans the VA promotes in its press release, as the cases of the Dorans and *Rudisill* amicus Mr. Attaway reveal. Without an injunction, the Secretary will almost certainly continue to apply *Rudisill* incorrectly to deny veterans access to benefits to which the Supreme Court has held they are statutorily entitled; the history of the *Rudisill* litigation and the Secretary's implementation of this Court's and the Supreme Court's decisions makes this plain. This will only lead to additional yearslong appeals, further administrative burdens, and unnecessary confusion amongst the veteran population as a result of the Secretary's incorrect unilateral readjudication efforts, as countless veterans seek to utilize the education benefits that Congress has made available to them for important readjustment purposes.

### Prayer for Relief

For all the reasons set forth above, Petitioners respectfully ask this Court to issue an order:

1.  Enjoining the Secretary from implementing the Montgomery and Post-9/11 GI Bills and *Rudisill* in a manner inconsistent with their plain terms;

---

[7] Again, this is not an isolated practice. Lead *Rudisill* veteran amicus Steven Attaway, *see* Brief of 10 Veterans as Amici Curiae in Support of Petitioner, *Rudisill v. McDonough*, No. 22-888, 601 U.S. 294 (2024), among others, recently received a unilateral readjudication letter very similar to Mr. Doran's. App. at 468–69.

19

2. Enjoining the Secretary from denying Petitioners' their full entitlement to Post-9/11 and Montgomery GI Bill educational benefits during the pendency of their appeals;

3. Directing the Secretary to take such further action and provide such other relief as this Court finds appropriate; and

4. Retaining jurisdiction over this matter to ensure compliance with the Court's orders.

Dated: Jan. 10, 2024

Respectfully Submitted,

/s/ Timothy L. McHugh
Timothy L. McHugh
William Harold Smith III
Lauren H. Miller
Troutman Pepper Hamilton Sanders LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
tim.mchugh@troutman.com
trey.smith@troutman.com
lauren.h.miller@troutman.com
(804) 697-1210
(804) 697-1365
(804) 697-1223

David J. DePippo
Dominion Energy Services, Inc.
Riverside 5
120 Tredegar Street
Richmond, VA 23219
(804) 418-2421

*Attorneys for Petitioners*

20

*Not published*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 25-255

PAUL H. YOON, ET AL.                                          PETITIONER,

      v.

DOUGLAS A. COLLINS,
Secretary of Veterans Affairs,                        RESPONDENT.

*Before* JAQUITH, *Judge.*

**O R D E R**

*Note: Pursuant to U.S. Vet. App. R. 30(a),*
*this action may not be cited as precedent.*

On January 10, 2025, petitioners Mr. Paul H. Yoon, Ms. Elizabeth F. Yoon, Mr. Toby G. Doran, and Mr. Thomas J. Doran, jointly filed a petition for extraordinary relief in the form of a writ of mandamus alleging unlawful action on the part of the Secretary. The Court requires a response from the Secretary in order to properly adjudicate this petition.

This Court has the authority under the All Writs Act, 28 U.S.C. § 1651(a), to issue extraordinary writs in aid of its prospective jurisdiction. *See Cox v. West*, 149 F.3d 1360, 1363-64 (Fed. Cir. 1998). This authority includes the ability to issue writs of mandamus to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2); *see Martin v. O'Rourke*, 891 F.3d 1338, 1343 (Fed. Cir. 2018). In order to adjudicate this petition, the Court requires a response from the Secretary addressing the petitioners' contentions. *See* U.S. VET. APP. R. 21(d).

      Upon consideration of the foregoing, it is

      ORDERED that the Secretary, within 30 days after the date of this order, file a response to the petition addressing the specific allegations contained therein and providing any documentation necessary for the Court to resolve this matter.

DATED: March 7, 2025                                   BY THE COURT:

                                                     *[signature]*

                                            GRANT C. JAQUITH
                                            Judge

Case: 25-289   Page: 2 of 2   Filed: 03/07/2025

Copies to:

Timothy L. McHugh, Esq.

VA General Counsel (027)

# IN THE UNITED STATES COURT OF APPEALS
# FOR VETERANS CLAIMS

| | | |
|---|---|---|
| **PAUL H. YOON, ET AL**, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | |
| v. | ) | Vet. App. No. 25-0255 |
| | ) | |
| **DOUGLAS A. COLLINS**, | ) | |
| Secretary of Veterans Affairs, | ) | |
| | ) | |
| Respondent. | ) | |

## SECRETARY'S RESPONSE TO PETITION FOR EXTRAORDINARY RELIEF AND COURT ORDER DATED MARCH 7, 2025

Pursuant to the United States Court of Appeals for Veterans Claims Rule 21(b), and the Order of this Court, dated March 7, 2025, Respondent, Douglas A. Collins, Secretary of Veterans Affairs (Secretary), hereby responds to the petition for injunctive relief. For the reasons set forth below, the Court should deny the petition.

Before the Court, Petitioner submitted a motion for extraordinary relief in the nature an injunction. Petitioner asks the Court to enjoin the Secretary from adjudicating Montgomery and Post-9/11 GI Bill claims for benefits with a "break-in-service or discharge/reenlistment requirement" to include granting the benefits for Petitioners Yoon and Doran. Petition (Pet.) at 2, 19-20. On March 7, 2025, the Court ordered the Secretary to respond to this petition.[1]

---

[1] Respondent requested and obtained three short extensions of time, totaling 21 days, to respond because new guidance appeared to be forthcoming from the agency on the matters that are the subject of this petition. Today, counsels for the Secretary were informed that no new

## SUMMARY OF PERTINENT FACTS

Petitioner, Paul H. Yoon, seeks transferred VA educational benefits for his daughter.[2]  Pet. at 7-8.  The regional office issued a decision indicating that Petitioner Yoon's educational benefits were limited because his service was considered a single period of qualifying active duty service.  Pet. at 8.  Petitioner Yoon appealed the regional office's decision to the Board.  Pet. at 8.  Petitioner Yoon asserts that, without this Court's intervention, Petitioner Yoon's Post 9/11 educational benefits will be exhausted by approximately May 2025.  Pet. at 9.

Petitioner, Toby Doran, seeks transferred VA educational benefits for his son.  Pet. at 10.  The regional office issued a decision indicating that Petitioner Doran's educational benefits were limited because his service was considered a single period of qualifying active duty service.  Pet. at 10.  Petitioner Doran appealed the regional office's decision to the Board.  Pet. at 11.  Petitioner Doran asserts that, without this Court's intervention, he will be forced to spend $23,102 on his son's educational expenses between now and May 2026.

## ARGUMENT

### 1.  The Petition is moot as it applies to Petitioner Doran

Where the particular relief sought by a petitioner has been afforded, the petition is moot.  *See Mote v. Wilkie*, 976 F.3d 1337, 1341 (Fed. Cir. 2020); *Chandler v. Brown*, 10 Vet.App. 175, 177 (1997) (citing *Mokal v.*

---

guidance will be issued.  In the event there is a revision of the Secretary's position, Respondent will notify the Court.

[2] The Secretary takes Petitioner's account of the facts, as recited in the Petition and supporting exhibits, as true and will cite to the Petition for efficiency.

*Derwinski*, 1 Vet.App. 12 (1990)); *see also Thomas v. Brown*, 9 Vet.App. 269, 270 (1996) (per curium order) (dismissing cases as moot because relief sought, issuance of Statement of the Case, had been accomplished without need for resort to Court); *Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) ("When there is no case or controversy, or when a once live case or controversy becomes moot, the Court lacks jurisdiction.").   Here, in the January 23, 2025, Decision Letter, Petitioner Doran was notified that he is entitled to 48 months of benefits in combination of the Montgomery GI Bill and the Post-9/11 GI Bill.  Exhibit A.; *see also* Exhibit B (January 23, 2025, Certificate of Eligibility).  Thus, as the relief sought by Petitioner Doran has been granted, the Petition is moot as to him.  *See Mote*, 976 F.3d at 1344.

## 2. *Extraordinary relief is unavailable as to Petitioner Yoon*

Under the All Writs Act, 28 U.S.C. § 1651, this Court has the authority to issue extraordinary writs in aid of its jurisdiction.  *Hambidge v. McDonough*, 37 Vet.App. 155, 158 (2024) (citation omitted).  Extraordinary relief, however, is just as it sounds, a "drastic" remedy that should only be invoked in extraordinary circumstances.  *Id.* (citations omitted).

Extraordinary relief "is unavailable when there is an adequate remedy by appeal."  *Wolfe v. McDonough*, 28 F.4th 1348, 1357 (Fed. Cir. 2022).  Traditionally, the writ in aid of jurisdiction was used to confine an inferior tribunal "to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority."  *Bankers Life & Casualty Co. v. Holland*, 346 U.S. 379, 382 (1953).  In this Court, the writ process is often used to "compel action of the Secretary unlawfully withheld or unreasonably delayed."  *Hambidge*, 37 Vet.App. 160 (citation omitted).  A writ, however, cannot be used to control decisions of a lower tribunal or an agency.  *Bankers*, 346 U.S. at 383.  Therefore, at minimum, a writ "cannot dictate a

particular outcome" when it is clear such an outcome can be attained through an administrative appeal. *Wolfe*, 28 F.4th at 1358. This prohibition on using extraordinary writs as substitutes for appeals obtains "even though hardship may result from delay and perhaps unnecessary trial," for "whatever may be done without the writ may not be done with it." *Bankers*, 346 U.S. at 383.

In *Wolfe*, for example, the Federal Circuit cited the petitioner's ability to appeal her case to this Court as decisive in determining that adequate alternate relief was available. *Wolfe*, 28 F.4th at 1357. Indeed, at the time Ms. Wolfe filed her petition, she was pursuing an administrative appeal. *Id.* The Federal Circuit found it significant that she never alleged that the administrative appeal was inadequate or that the Secretary had refused to proceed with or unreasonably delayed the appeal. *Id.* at 1357-58.

Likewise, in the instant petition, Petitioner Yoon has an adequate remedy. He is pursuing an appeal to the Board and seeking to have his appeal advanced on the docket. Petitioner Yoon has not alleged that the Secretary has refused to proceed with or unreasonably delayed the appeal. The instant petition should be denied because Petitioner Yoon has an adequate remedy by appeal. *See Wolfe*, 28 F.4th at 1357; *Hambidge*, 37 Vet.App. at 161 ("the normal appeal process serves as an adequate alternative means to obtain the relief the petitioner seeks").

Petitioner contends that the lack of adequate alternative means to obtain the desired relief is an "unprecedented fifth factor to use when determining whether injunctive relief is appropriate." Pet. at 12 n.2. This is incorrect. The availability of adequate alternative means to obtain the desired relief is a well-established overriding principle recognizing that extraordinary relief is a drastic remedy that should only be invoked in

extraordinary circumstances. *See Wolfe*, 28 F.4th at 1357 (explaining that extraordinary relief "is unavailable when there is an adequate remedy by appeal").

Petitioner Yoon asserts that he will suffer significant harms and possibly irrevocable life choices. However, such harm is not uncommon in the context of veterans claims where claimants may be dealing with significant financial hardships and/or serious medical and psychological challenges. Nonetheless, the prohibition on using extraordinary writs as substitutes for appeals obtains "even though hardship may result from delay," for "whatever may be done without the writ may not be done with it." *Bankers*, 346 U.S. at 383. Petitioner Yoon has not demonstrated extraordinary circumstances that would warrant granting a petition for extraordinary relief.

### 3. Petitioner Yoon fails to meet the requirements for injunctive relief

To warrant injunctive relief, a party must demonstrate four conditions: (1) that it will be irreparably injured; (2) that there is a likelihood of success on the merits; (3) that the public interest would be better served by the relief requested; and (4) that the balance of hardship on all the parties favors the petitioner. *Hambidge*, 37 Vet.App. at 159.

First, Petitioner Yoon has not established that he will be irreparably injured. As Petitioner Yoon acknowledges, his Post 9/11 educational benefits will be exhausted by approximately May 2025. Until his educational benefits are exhausted, there is no injury. Petitioner Yoon's complaint of irreparable injury is premature.

Second, Petitioner's argument as to the likelihood of success on the merits overlooks a strong argument to the contrary. Although Petitioner's argument focuses primarily on principles of fairness, given the lengthy and

Case: 25-1839   Document: 26   Page: 70   Filed: 06/13/2025

honorable service by Petitioner, VA is only empowered to grant benefits authorized by Congress. *See Eicher v. Shulkin*, 29 Vet.App. 57, 63 (2017) (affirming the denial of benefits where "[n]o statute or regulation in the comprehensive veterans benefits system authorizes the Secretary to pay" the benefits sought). The caption to 38 U.S.C. § 3322(h) is "Bar to duplication of eligibility based on a single event or period of service." The denial of benefits to Petitioner Yoon was not arbitrary but was based on the language of a statute passed by Congress. To the extent that VA's interpretation of the statute might be mistaken, the issue is pending before a panel in *Perkins v. Collins*, No. 24-6515. The likelihood of success on the merits is directly related to the result in *Perkins*. If the Secretary obtains a favorable decision in *Perkins*, Petitioner Yoon will not succeed on the merits.

Finally, the public interest would not be better served by a grant of the relief requested and the balance of hardship on all the parties does not favor the Petitioner Yoon. Granting the petition in this case would encourage claimants to routinely seek injunctive relief on the grounds of financial impact of the claims denied by the regional office. Extraordinary relief would become routine and not limited to extraordinary circumstances. As in this case, where the financial impact is not yet realized, it would expand extraordinary relief beyond its appropriate bounds.

The requirements for injunctive relief have not been met.

The Secretary also notes that a Brief of Amici Curiae (B.A.C.) was submitted and accepted for filing on April 9, 2025. Though the Court did not expressly order the Secretary to respond to this brief, the Secretary notes that the brief largely presents argument with respect to how to interpret *Rudisill v. McDonough*, 601 U.S. 294, 306 (2024). (B.A.C. at 12-

Appx039

15).  This is, *inter alia*, a question that is pending before a panel of this Court in *Perkins v. Collins*, No. 24-6515.  The pending panel's precedential decision in *Perkins* would presumably control the *Yoon* appeal and it is through that standard appellate process, and not through an attempt to short-circuit that process with a writ petition, that the matter should be decided.

## CONCLUSION

For the foregoing reasons, Respondent urges that the Petition should be denied.

Respectfully submitted,

**DANIELLE A. RUNYAN**
Acting General Counsel

**DAVID L. QUINN**
Acting Chief Counsel

/s/ Mark J. Hamel
**MARK J. HAMEL**
Deputy Chief Counsel

/s/ Mark M. McNabb
**MARK M. McNABB**
Senior Appellate Counsel
Office of General Counsel (027J)
U.S. Dept. of Veterans Affairs
810 Vermont Avenue, N.W.
Washington, DC  20420
(202) 632-4365

Attorneys for the Respondent,
Secretary of Veterans Affairs

Appx040

# EXHIBIT A



**DEPARTMENT OF VETERANS AFFAIRS**
**MUSKOGEE REGIONAL OFFICE**
**P.O. BOX 8888**
**MUSKOGEE OK 74402-8888**

January 23, 2025

TOBY G DORAN

████████████████████
████████████████████

In Reply Refer To:    351/22

T G Doran
XXX-XX-████

Dear Mr. Doran:

We received your request for a Rudisill review.

A recent decision made by the United States Supreme Court has changed VA's interpretation of Section 3327 (h) of Title 38, United States Code. The new interpretation allows beneficiaries more flexibility in the use of their VA Education benefit programs when entitled to more than one benefit, or when they are eligible to make a choice between the use of two or more benefits.

We have performed a review of your claim to determine how the changes may apply to you. This letter provides information about what we did on your claim, your options for coordinating your benefits, and how to contact us.

Unfortunately, we can't pay you any more Montgomery GI Bill (MGIB) education benefits. You were entitled to 48 months and 0 days of benefits in combination of the Montgomery GI Bill (MBIG) and the Post-9/11 GI Bill (PGIB).  You have used 33 months and 25 days of the MGIB benefits and have transferred the remaining entitlement of 14 months and 5 days to your dependent(s) to use under the PGIB.

Should you revoke entitlement from your dependent and wish to use the revoked entitlement under MGIB your eligibility period has been extended due to the Rudisill v. McDonough decision. (Authority of 38 USC 3031(i)). You new delimiting date for MGIB is April 21, 2035.

## Your Right To Seek Additional Review

You have one year from the date of this letter to request an additional review of our decision. You should do this if you disagree with our decision about your eligibility for benefits, the amount of your payments or debts, or the reason a payment or debt was issued. For more information, please see the enclosed **VA Form 20-0998**, *Your Rights to Seek Further Review of Our Decision*. It explains your options for an additional review. You may also learn more about the appeal process at www.va.gov/decision-reviews.

## If You Have Questions or Need Assistance

| | |
|---|---|
| Website | www.va.gov |
| VA Forms | www.va.gov/vaforms |
| Ask VA online: *Please select GI Bill as the topic of your inquiry* | ask.va.gov |
| Mailing Address: *Include your full name and VA file number on the inside of mailed correspondence (not on envelope)* | See address at the top of this letter |
| Education Call Center | 1-888-GI-BILL-1 (1-888-442-4551) (inside the U.S.) 001-918-781-5678 (outside the U.S.) |
| TTY, Federal Relay | 711 |
| Veterans Crisis Line | 1-800-273-8255 and press 1 |
| VA Regional Office Location | www.va.gov/find-locations |
| GI BILL® Comparison Tool: *This tool allows you to get information on a school's value and affordability; and to compare estimated benefits by school.* | www.va.gov/gi-bill-comparison-tool |

Sincerely,

Education Officer

Enclosures: VA Form 20-0998

cc: Disabled American Veterans 348/083

# EXHIBIT B



DEPARTMENT OF VETERANS AFFAIRS
MUSKOGEE REGIONAL OFFICE
P.O. BOX 8888
MUSKOGEE, OK 74402-8888

JANUARY 23, 2025

THOMAS J. DORAN


351/22
TJDORAN
XXX-XX- 

Dear THOMAS DORAN:

## Certificate of Eligibility

This certifies that you are entitled to benefits for an approved program of education or training under the Post-9/11 GI Bill (38 CFR 21.9590).

> **You must take this letter to your school. Your school must certify your enrollment before you can get paid (38 CFR 21.9720).**

Toby Doran has transferred 14 months and 5 days of full-time benefits to you, beginning October 22, 2012. You have 11 months and 16 days of full-time benefits remaining (38 CFR 21.9570; 38 USC 3319).

You will remain eligible under the Post-9/11 GI Bill prior to June 1, 2030, which is your 26th birthday (38 CFR 21.9570; 38 USC 3319).

You're entitled to receive 100% of the benefits payable under the Post-9/11 GI Bill program for training offered by an institution of higher education. We determined this percentage based on Toby Doran's length of creditable active duty service (38 CFR 21.9640; 38 USC 3311). We based our decision on the following service information:

| Begin Date | End Date | Service Length (in days) | Training Length (in days) | Total (Service/Training) |
|---|---|---|---|---|
| 06/20/1991 | 12/31/2018 | 6,321 | 0 | 6,321 |
| Total: | | 6,321 | 0 | 6,321 |

## Requirement to Verify Enrollment Status

Section 1010 of Public Law 116-315 now requires GI Bill beneficiaries who attend Institutes of Higher Learning and Non-College Degree programs to verify their continued enrollment status in order to continue receiving a monthly housing allowance (MHA) and/or kickers. If you do not receive either MHA or a kicker, you will not need to verify your enrollment status. **If you fail to**

Appx045

TJDORAN
XXX-XX-

**verify your enrollment status for two consecutive months, VA will withhold your monthly housing allowance and/or kicker payments until we have received verification of your enrollment status** (38 USC 3313(l)(1)(B)(3)).

### How to Prepare for this Change

The most important way you can prepare for this change is to make sure that your VA Education records have an up-to-date mobile phone number and/or email address. If you are unsure that your education record contains up-to-date contact information, please contact us using one of the following methods:

Call the **Education Call Center at 1-888-GI-BILL-1** (1-888-442-4551) or (001-918-781-5678 when calling from outside the U.S.); Monday to Friday, 7 a.m. to 6 p.m. Central Time - TTY Federal Relay: 711

Or

Online through **Ask VA** at https://ask.va.gov. Please select "GI Bill" as the category for your question. If you have never used this system, you will need to create an account.

### How to Verify Your Enrollment

<u>Once we have processed a term that is affected by the change</u>, you should receive a text message from VA asking if you would like to use text messages to verify your enrollment. When you **opt-in**, we'll send you a text message each month asking if you continue to be enrolled.

You should also receive a payment letter that contains additional information about the verification requirement, including your options to verify. If you do not receive an automated opt-in text message by the time you receive the payment letter, please contact the **Education Call Center** to manually opt-in.

## Choosing the Right Career and Training

Use the O*NET® Interest Profiler™ at My Next Move, a family of self-assessment career exploration tools, to help you find a future occupation that interests and excites you. In 30 minutes, you could identify and learn more about your broad interest areas and use those results to explore the world of work that awaits you. To access the Interest Profiler, please visit: https://www.mynextmove.org/explore/ip.

## What You Must Do

If you have not provided electronic banking (direct deposit) information to VA Education Service, you should do this before your enrollments are submitted for payment. **You can provide or update your banking information** by calling the Education Call Center at 1-888-GI-BILL-1 (1-888-442-4551) or (001-918-781-5678 when calling from outside the U.S.); Monday to Friday, 7 a.m. to 6 p.m. Central Time - TTY Federal Relay: 711.

Case: 25-258    Page: 14 of 20    Filed: 04/28/2025



**Please Note:** _The Veterans Benefits Administration (VBA) uses one payment address across all business lines. Your payment address is your direct deposit banking information unless you are receiving paper checks. Then it is your mailing address. Updating your payment address for Education payments will update your payment address for all VBA payments, **to include disability compensation**._

You should also take this letter to your school's veterans certifying official as proof of your eligibility and ask him or her to submit your enrollment certification to VA. After your school submits your enrollment certification, your tuition and fees payment will be sent to the school on your behalf. All other payments will be sent directly to you.

## How to Minimize Debts

Generally, VA cannot pay for:

- Courses you do not attend.
- Courses from which you withdraw.
- Courses you complete but receive a grade which will not count towards graduation.

When your school submits changes to your enrollment information, VA must create debts for the amounts paid that are no longer due. VA will create the debt against **you and/or your school** for these benefits. You may also owe money to your school when you drop classes or withdraw from school. **You must promptly notify your school's veterans certifying official and VA when there is any change in your enrollment**. This will help minimize your debt. For additional information regarding debts, please visit
https://www.benefits.va.gov/gibill/resources/education_resources/debt_info.asp.

VA Education benefits are not payable if you are a Federal Employee or contractor receiving payment for your training under the Government Employee Tuition Assistance (GETA) program. Federal Tuition Assistance received may also limit VA benefit payments. Notify your school's certifying official in advance of taking any courses which are covered by GETA or when receiving Federal Tuition Assistance to prevent overpayments.

## Career Counseling

The receipt of this Certificate of Eligibility (COE) means that you are also eligible for VA-provided professional career counseling services at any time during your eligibility period.
**Please note:** When considering the school(s) for which you would like to receive your educational training, we recommend that you research your perspective school using the GI Bill Comparison Tool and our "Factors to Consider When Choosing a School: A guide before using the G.I. Bill".

- GI Bill Comparison Tool: www.vets.gov/gi-bill-comparison-tool
- 'Factors to Choosing a School: A guide before using the GI Bill':
  www.benefits.va.gov/gibill/docs/factsheets/choosing_a_school.pdf

Pay particular attention to whether your prospective school(s) has articulation agreements in place,

TJDORAN
XXX-XX-

what the agreement involves, and how it applies to credit transferability should you wish to transfer to a different school at a later date.

If you have questions, particularly about articulation agreements, or would like more information about career counseling services, you may call VA to speak directly with a customer service representative at 1-800-827-1000.

Additionally, if you are within six months of discharge, you may be eligible for VA's professional career counseling. For more information, call 1-800-827-1000.

## Your Right To Seek Additional Review

You have one year from the date of this letter to request an additional review of our decision. You should do this if you disagree with our decision about your eligibility for benefits, the amount of your payments or debts, or the reason a payment or debt was issued. For more information, please see the enclosed **VA Form 20-0998**, *Your Rights to Seek Further Review of Our Decision*. It explains your options for an additional review. You may also learn more about the appeal process at www.va.gov/decision-reviews.

Sincerely,

Education Officer

Enclosures:   We Are Here To Help
              VA Form 20-0998
              VA-VBA-TED-Flyer-PCPG

# We Are Here To Help

### CONTACT US

- Ask a question online at https://ask.va.gov/. Please select GI Bill as the category for your question.
- Call our Education Call Center, toll-free at 1-888-GI-BILL-1 (1-888-442-4551) (inside the U.S.) or 001-918-781-5678 (outside the U.S.). If you have hearing loss, call TTY: 711.
- Seek confidential support using the Veterans Crisis Line by phone at 988 (then press 1), by text at 838255, or online chat at https://www.veteranscrisisline.net/get-help-now/chat/.
- Find a VA Regional Office at https://www.va.gov/find-locations.
- Reach us via our mailing address at the top of this letter.
- Follow VA Education Service on Facebook, Twitter, or Instagram for updates and news (https://www.facebook.com/gibillEducation/, https://twitter.com/VAVetBenefits, https://www.instagram.com/vabenefits/).

### ADDITIONAL RESOURCES

- Find more information about VA education benefits at https://www.va.gov/education.
- Learn more about using your VA education benefits through the Building your Future with the GI Bill series at https://blogs.va.gov/VAntage/78073/new-guide-series-provides-gi-bill-benefits-information/.
- Compare schools using the GI Bill Comparison Tool at https://www.VA.gov/education/gi-bill-comparison-tool.
- Use the O*NET® Interest Profiler™ family of self-assessment career exploration tools to help you find a future occupation that interests you at My Next Move: https://www.mynextmove.org.
- Learn about education and career counseling offered through VA's Personalized Career Planning and Guidance at https://www.va.gov/careers-employment/education-and-career-counseling/.
- Find VA Forms at https://www.va.gov/find-forms/.

### MEDICAL CARE AND TREATMENT

- Learn about eligibility for health care, toll free at 1-877-222-VETS (8387) or visit https://www.va.gov/health-care/eligibility/.
- Manage your healthcare and learn about mental health counseling at https://www.myhealth.va.gov.
- Locate your nearest VA Medical Center, outpatient clinic, or dental provider at https://www.va.gov/find-locations/.
- Find rehabilitation, prosthetics, and physical therapy options at https://www.rehab.va.gov.
- Learn about special disability claims for automobile or adaptive equipment, clothing allowance, temporary disability care, and more at https://www.va.gov/disability/eligibility/special-claims/.

Case: 25-258   Page: 14 of 20   Filed: 04/28/2025


## Department of
## Veterans Affairs

# YOUR RIGHT TO SEEK REVIEW OF OUR DECISION

This document outlines your right to seek review of our decision on any issue with which you disagree. You may generally select one of three different review options for each issue decided by VA. However, you may not request review of the same issue using more than one option at the same time. Below is information on the three different review options.

|  | **Supplemental Claim** | **Higher-Level Review** | **Board Appeal** |
|---|---|---|---|
| **What Is This?** | A reviewer will determine whether new and relevant evidence changes the prior decision. | An experienced claims adjudicator will review your decision using the same evidence VA considered in the prior decision. | A Veterans Law Judge at the Board of Veterans' Appeals (Board) will review your decision. |
| **By Selecting This Option** | You are adding or identifying new and relevant evidence to support your claim that we did not previously consider.<br><br>VA will assist you in gathering new and relevant evidence that you identify to support your claim. | You have no additional evidence to submit to support your claim, but you believe there was an error in the prior decision.<br><br>You can request an optional, one-time, informal conference with a Higher-Level Reviewer to identify specific errors in the case, although requesting this conference may delay the review. | You must choose a docket:<br><br>**Direct Review** - You do not want to submit evidence or have a hearing.<br><br>**Evidence Submission** - You choose to submit additional evidence without a hearing.<br><br>**Hearing** - You choose to have a hearing with a Veterans Law Judge. |
| **Goal To Complete** | **125 days** on average | **125 days** on average | **365 days** on average for Direct Review (longer for the other options) |
| **Form To File To Select This Option\*** | **VA Form 20-0995,** *Decision Review Request: Supplemental Claim* | **VA Form 20-0996,** *Decision Review Request:Higher-Level Review* | **VA Form 10182,** *Decision Review Request: Board Appeal (Notice of Disagreement)* |
| **Further Options After This Decision Review** | You may request another Supplemental Claim, a Higher-Level Review, or a Board Appeal. | You may request a Supplemental Claim or a Board Appeal. | You may request a Supplemental Claim or appeal to the U.S. Court of Appeals for Veterans Claims. |

\* All forms listed above are available at www.va.gov/vaforms/.

 For most VA benefits, **you have 1 year from the date on your decision notice to request a decision review to ensure the earliest possible effective date.** Consult your decision notice for specific limitations.

If you do not submit a decision review request within the required time, you may only seek review through the following:
- A request to revise the decision based on a clear and unmistakable error, or
- A Supplemental Claim. If you file a Supplemental Claim after the **1-year** time limit, the effective date for any resulting award of benefits generally will be tied to the date VA receives the Supplemental Claim.

Appx051

While most decision review options are available to you, there are limitations based on the type of decision you received.

• If you are a party to a **contested claim** - such as claims for apportionment, attorney fee disagreement, or multiple parties filing for survivor's benefits - your *only* option for disagreeing with your decision is to file a Board Appeal within **60 days** of the date on your decision notice.

• If you are seeking review of an **insurance decision** you have an *additional* option to challenge VA's decision by filing a complaint with a United States district court in the jurisdiction in which you reside within 6 years from when the right of action first accrues. Consult your decision notice for details on what options are available and where to send the request.

### Get Help with Your Review Request:

For more information on all the available review options, contact us at 1-800-827-1000 or visit www.va.gov/decision-reviews/. If you need help filing a decision review, you may want to work with an accredited attorney, claims agent, or a Veterans Service Organization (VSO) representative. Additional information about working with an accredited attorney, claims agent, or VSO representative is available at www.va.gov/decision-reviews/get-help-with-review-request/. You may also find a directory of accredited representatives at www.va.gov/vso.

Case: 25-258    Document: 26    Page: 20 of 20    Filed: 04/28/2025

*December 2020*

## Personalized Career Planning and Guidance (PCPG)
# HELPING YOU PLAN YOUR CAREER TRANSITION

## What is PCPG?

You are eligible for the GI Bill, but do you know that you are also eligible for Personalized Career Planning and Guidance (PCPG)? PCPG is a program designed to support you in making a successful transition from military to civilian life.

PCPG offers career counseling, assessment, education planning and guidance resources to help you set and achieve personal, career and education goals. It provides you with one-on-one support – putting you in the driver's seat of your education or career plan.

## How can PCPG support you?

PCPG provides a dedicated, certified career counselor who will tailor a program to meet your needs, which may include:

- **Resume and interviewing skills**
- **Guidance on maximizing your VA education benefits**
- **Referrals to VA and community resources**
- **Academic and adjustment counseling**

You will also have access to expanded follow-up sessions and support, as long as you remain eligible for the benefit.

## How can I find out more?

To apply for PCPG, or learn more about the benefits:

 **APPLY ONLINE** – Visit VA.gov to complete and submit your application.

 **APPLY BY MAIL** – Fill out the application located at https://www.vba.va.gov/pubs/forms/VBA-28-8832-ARE.pdf and mail it to your local VA Regional Office.

 **APPLY IN PERSON** at your local VA Regional Office or by visiting a VetSuccess On Campus (VSOC) office.

 **ACCESS THE ELIGIBILITY WIZARD** at: https://www.va.gov/careers-employment/education-and-career-counseling/

 **FIND A VETSUCCESS ON CAMPUS LOCATION** at: https://www.benefits.va.gov/vocrehab/vsoc.asp

 **FIND A VA REGIONAL OFFICE** at: https://www.benefits.va.gov/benefits/offices.asp

*PCPG will help you plan for a successful future and achieve your education and career goals. Apply today!*





Appx053



Troutman Pepper Locke LLP
Troutman Pepper Locke Building, 1001 Haxall Point, 15th Floor
Richmond, VA 23219
troutman.com

**Timothy L. McHugh**
tim.mchugh@troutman.com

June 2, 2025

Clerk of the Court
United States Court of Appeals for Veterans Claims
625 Indiana Avenue NW, Suite 900
Washington, DC 20004-2950

Re: *Yoon v. Collins*, 25-255 – Constructive Denial of Petitioners' Requested Emergency Relief

Dear Clerk:

Petitioners Paul H. Yoon, Elizabeth F. Yoon, Toby G. Doran, and Thomas J. Doran (collectively, "Petitioners") write to respectfully inform the Court that if this Court does not grant relief by June 4, 2025, Petitioners believe that would serve as a constructive denial of their Petition for Extraordinary Relief, which has been pending since January 10, 2025. **Accordingly, absent relief from this Court by June 4, Petitioners will be appealing to the U.S. Court of Appeals for the Federal Circuit and pursue other appropriate relief on June 5, 2025.**

As a panel of this Court confirmed in *Perkins v. Collins*, No. 24-6515 (Vet. App. May 16, 2025) (and all 50 States, DC, and CNMI explained in their *amici* brief in this matter), the Secretary's continued denial of benefits to Petitioners is an egregious, outright defiance of the Supreme Court's decision in *Rudisill v. McDonough*, 601 U.S. 294 (2024) and a dereliction of his statutory obligations as Secretary, as interpreted by the Nation's high Court. Because Ms. Yoon's law school tuition is due in a matter of weeks and there is no way to unwind the harm that will result if the benefits are withheld, Pet. for Extraordinary Relief at 15–17, Vet. App. No. 25-255 (Jan. 10, 2025); Notice of Suppl. Auth., Vet. App. No. 25-255 (May 23, 2025), there can be no serious dispute that immediate relief is necessary to prevent Petitioners' irreparable harm and to honor them with the benefits that Congress provided, as the U.S. Supreme Court held in *Rudisill* and this Court just held in *Perkins*.

Respectfully submitted,

*/s/ Timothy L. McHugh*
Timothy L. McHugh
Mary Grace W. Metcalfe
William Harold Smith III
Lauren H. Miller

1



TROUTMAN PEPPER LOCKE LLP
1001 Haxall Point, Suite 1500
Richmond, VA 23219
tim.mchugh@troutman.com
marygrace.metcalfe@troutman.com
trey.smith@troutman.com
lauren.h.miller@troutman.com
(804) 697-1365
(212) 704-6029
(804) 697-1218
(804) 697-1223

David J. DePippo
Dominion Energy Services, Inc.
Riverside 5
120 Tredegar Street
Richmond, VA 23219
(804) 418-2421

*Counsel for Petitioners*

CC:    Clerk of Court, United States Court of Appeals for the Federal Circuit,
       The Honorable D. John Sauer, Solicitor General of the United States,
       Acting Assistant Attorney General Yaakov M. Roth

2

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 24-6515

KASSIDY A. PERKINS, APPELLANT,

v.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued March 13, 2025)                                    Decided May 16, 2025)

*Lauren H. Miller*, with whom *Timothy L. McHugh*, *David J. DePippo*, and *William H. Smith III*, all of Richmond, Virginia, were on the brief for the appellant.

*Kirsten S. Dowell*, with whom *Richard J. Hipolit*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Sarah W. Fusina*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before ALLEN, *Chief Judge*, and TOTH and LAURER, *Judges*.

ALLEN, *Chief Judge*: This appeal is, in many respects, a sequel to the Supreme Court's 2024 decision in *Rudisill v. McDonough*.[1] And, just as in film, understanding a sequel requires that we review what happened in the first installment. So, we will spend significant time below reviewing what the Supreme Court decided in *Rudisill* and why it did so. Practically speaking, that decision is the guide for our resolution of the appeal before us today. But we're getting ahead of ourselves.

The case before us presents an important question concerning how a lengthy, single, unbroken period of service affects eligibility for two educational benefits: the Montgomery GI Bill (MGIB) (i.e., chapter 30 of title 38 of the U.S. Code) and the Post-9/11 GI Bill (Post-9/11) (i.e., chapter 33 of title 38 of the U.S. Code). Appellant Kassidy A. Perkins served the Nation honorably as an enlisted servicemember in the U.S. Air Force with a single, unbroken period of service from August 12, 2014, to August 11, 2020.[2] In this appeal, which is timely and over which the Court

---

[1] 601 U.S. 294 (2024).

[2] Record (R.) at 236.

has jurisdiction,[3] appellant contests an August 6, 2024, Board of Veterans' Appeals (Board) decision that denied her entitlement to MGIB benefits.[4] As we will detail below, there is no dispute that appellant's lengthy period of active-duty service qualified her for benefits under *both* the MGIB and Post-9/11 GI Bills. The dispute is about whether the nature of Ms. Perkins' service means that she must decide whether to receive benefits under one program or the other or, in contrast, whether she can receive benefits under both programs subject to a total statutory cap. The Board denied appellant entitlement to MGIB benefits because it concluded that 38 U.S.C. § 3322(h) barred her from qualifying for both MGIB benefits and Post-9/11 benefits based on a single, continuous period of service that occurred after subsection (h)'s effective date, August 1, 2011.[5]

The Board was wrong as a matter of law. As we will explain below, we hold that a veteran whose single period of service is long enough to qualify for benefits under both the MGIB and Post-9/11 programs without using any period of time twice to establish eligibility[6] is entitled to receive benefits under both programs up to a statutory 48-month cap on such educational benefits. We will reverse the Board's decision that appellant is barred from qualifying for MGIB benefits in addition to her entitlement to Post-9/11 benefits and remand this matter for the assignment of educational benefits under the correct understanding of the law.

## I.  BACKGROUND

The facts underlying this appeal are straightforward and uncontested. As we noted, appellant served on active duty as an enlisted servicemember in the U.S. Air Force from August

---

[3] *See* 38 U.S.C. §§ 7252(a), 7266(a).

[4] R. at 5-8.

[5] R. at 7-8.

[6] What we mean by using a time period "twice" to establish eligibility can be captured in this simplified hypothetical. Assume a person qualifies for benefits under the MGIB with 2 years of service and qualifies for benefits under the Post-9/11 program with 3 years of service. If Veteran A had 5 years of total service, she could qualify for benefits under both programs without counting any year twice—years 1 and 2 could be used for MGIB benefits and years 3 to 5 could be used for Post-9/11 benefits. In contrast, Veteran B has only 4 years of service. He could not qualify for benefits under both programs without using one of his years twice—for example years 1 and 2 for the MGIB benefits and years 2 to 4 for the Post-9/11 benefits. In this hypothetical, year 2 would be used twice to establish eligibility, once for each program. We explore this issue further below. We provide this summary to assist the reader's understanding of the opinion as it develops.

12, 2014, to August 11, 2020.[7] Before her separation from service, appellant was admitted to Wesleyan University.[8] In October 2019, she sought Post-9/11 educational benefits.[9] Later that month, VA issued a certificate of eligibility (COE) for Post-9/11 benefits, notifying appellant that she was eligible to receive 36 months of Post-9/11 benefits.[10] VA also informed her that it "made an alternative election on [her] behalf to relinquish [(MGIB)]" benefits to establish her eligibility for Post-9/11 benefits.[11] Put differently, VA told appellant she could no longer receive MGIB benefits if she wished to receive or use Post-9/11 benefits.

In September 2020, appellant appealed the October 2019 COE determination to the Board.[12] As we explore in detail below, she argued that her 6-year period of active-duty service entitled her to benefits under both the MGIB and the Post-9/11 GI Bill.[13] In August 2024, the Board issued the decision on appeal before us in which it denied appellant entitlement to MGIB benefits.[14] It reasoned that section 3322(h)(1) barred appellant from eligibility to more than one educational benefit because her single period of service occurred after the date on which subsection (h) took effect.[15] The Board explained that

> [T]he law bars 'duplication of eligibility' based on a single period of service that began on August 1, 2011, or later. In other words, service that began on August 1, 2011, or later cannot be credited towards both Chapter 30 benefits and Chapter 33 benefits. . . This bar to duplication of eligibility based on a single event or period of service was due to amendments enacted by Congress which were made effective August 1, 2011.[16]

The Board also acknowledged the Supreme Court's decision in *Rudisill*.[17] The Board apparently concluded that *Rudisill* was not controlling in appellant's case based on a factual

---

[7] R. at 236.

[8] R. at 40.

[9] R. at 40, 65.

[10] R. at 178.

[11] *Id*.

[12] R. at 38.

[13] R. at 41.

[14] R. at 5-8.

[15] R. at 7-8.

[16] R. at 6-7.

[17] R. at 7 (citing 601 U.S. 294).

3

distinction between appellant and the petitioner in *Rudisill*—namely that Mr. Rudisill had two separate periods of service that each independently qualified for entitlement to both MGIB and Post-9/11 benefits while appellant had only a single period of service.[18] The Board determined that, unlike the petitioner in *Rudisill*, appellant was not entitled to MGIB benefits in addition to her entitlement to Post-9/11 benefits because she served a single period of service after August 1, 2011.[19] This appeal followed.

## II. PARTIES' ARGUMENTS

### A. Appellant

Appellant asks the Court to reverse the Board's decision that denied her entitlement to MGIB benefits.[20] She argues that the Board erred in requiring a "break in service" or multiple obligated periods of active service in order for her to qualify for more than one type of educational benefit.[21] Appellant presents a single theory under which she argues she's entitled to both MGIB and Post-9/11 benefits. She contends that her approximately 6 years of continuous active-duty service qualifies for separate entitlements under both programs without having to use any of her time in service twice to support entitlement under both programs.[22] In other words, she does not need to double count any time to establish her separate entitlements. Appellant asserts that *Rudisill* is dispositive of the appeal.[23] There, the Supreme Court, in relevant part, held that veterans with separate entitlements to both MGIB and Post-9/11 benefits may use their benefits in any order up to the 48-month aggregate cap under 38 U.S.C. § 3695 without having to swap one GI Bill benefit for the other via a 38 U.S.C. § 3327 election.[24] Appellant highlights that the majority in *Rudisill* expressly focused on the *length* of the petitioner's service rather than the quantity of his *periods* of service when it assessed his entitlement to educational benefits.[25]

---

[18] *Id.*

[19] R. at 7-8.

[20] Appellant's Brief (Br.) at 1, 15.

[21] *Id.* at 1-2, 5-8, 11-15.

[22] *Id.*. at 4-5.

[23] *Id.* at 8-15; Reply Br. at 1-2.

[24] *Rudisill*, 601 U.S. at 294-95.

[25] Appellant's Br. at 4-5 (citing *Rudisill*, 601 U.S. at 305-06, 314), 13 (citing *Rudisill*, 601 U.S. at 302).

Next, appellant asserts that the Board erred when it employed section 3322(h)(1) to bar her from obtaining entitlement to benefits under both programs.[26] She argues that subsection (h) does not apply to her situation because it only acts as a bar to prevent veterans from obtaining entitlement to both MGIB benefits and Post-9/11 benefits based on the same or overlapping service.[27] In other words, because appellant need not use any of her time in service twice to establish entitlement to benefits under both programs, she maintains that subsection (h) simply has no relevance to her situation.

Finally, appellant contends that the Board's break-in-service requirement would yield absurd and inconsistent results.[28] For example, appellant notes that the Secretary's interpretation of subsection (h) would permit veterans who served less time than she did to obtain more benefits. Specifically, a person could have two separate periods of service (that is, there is a break in service) for 2 years and 3 years, respectively, which could qualify them for benefits under both programs. Yet, based on the Board's interpretation of the law, appellant's 6 years would entitle her to benefits only under one program.[29]

### B. Secretary

The Secretary defends the Board's decision in full, urging us to affirm the Board's interpretation of the relevant statutory provisions on which it based its denial of benefits to appellant. The Secretary essentially makes two arguments. First, he maintains that subsection 3322(h)(1) prohibits veterans who complete a single period of service that began on or after August 1, 2011, from eligibility for more than one educational benefit under title 38 of the U.S. Code, no matter how lengthy that single period of service may be.[30] The Secretary contends that subpart (h)(1) is best read through the lens of its heading: "[b]ar to duplication of eligibility based on a single event or period of service."[31] Putting this together, he concludes that subsection (h) applies to veterans whose active duty service spanned one continuous period beginning on or after August 1, 2011. So, these veterans are required to choose under which of the two GI Bills they wish to

---

[26] *Id*. at 12-14.

[27] *Id*. at 13-14.

[28] *Id*. at 5-6, 14-15.

[29] *Id*. at 14-15.

[30] Secretary's Br. at 4.

[31] *Id*. at 4-5.

receive benefits.[32] During oral argument, the Secretary's counsel made clear that subsection (h) does not apply to individuals who entered active duty before August 1, 2011.[33] In sum, the Secretary maintains that appellant is subject to subsection 3322(h)'s bar to entitlement to two educational benefits because her period of active-duty service began after August 1, 2011.

Second, the Secretary focuses on the fact that appellant had a single period of service as opposed to serving more than one period separated by a break.[34] And he uses the fact of appellant's single period of service as a means of distinguishing the Supreme Court's decision in *Rudisill*.[35] The Secretary asserts that *Rudisill* doesn't apply in appellant's situation because Mr. Rudisill's entitlement to MGIB and Post-9/11 benefits derived from his three discrete periods of service.[36] In other words, the Secretary's view is that *Rudisill* is cabined to its facts.

### III. ANALYSIS

We now turn in earnest to our resolution of this appeal. We proceed in four parts. First, we provide some basic context for the MGIB and Post-9/11 programs, particularly explaining why Ms. Perkins satisfies the eligibility requirements for both programs. Second, we detail the facts underlying the Supreme Court's decision in *Rudisill*. In addition, and at the risk of injecting some repetitiveness into this opinion, we explore the Supreme Court's holdings and reasoning. As we explained at the beginning of our opinion, *Rudisill* is instrumental in our resolution of this sequel case. Next, we consider the Secretary's two arguments supporting the Board's decision. We explain why we reject both of them. And finally, we explain the remedy we impose.

#### A. Eligibility Under the MGIB and Post-9/11 Programs

The two education benefits programs at issue in this appeal partly overlap. Generally, the MGIB program provides entitlement to educational benefits to veterans who entered active duty between July 1, 1985, and September 30, 2030.[37] The Post-9/11 program, on the other hand, generally provides entitlement to educational benefits to individuals who entered active duty on or

---

[32] *Id*. at 4-8.

[33] Oral Argument (OA) at 26:35-27:06, 44:58-46:10, *Perkins v. Collins*, U.S. Vet. App. 24-6515 (oral argument held March 13, 2025), https://www.youtube.com/watch?v=m3G3fA_fGGU.

[34] Secretary's Br. at 3-5.

[35] *Id*. at 10-11.

[36] *Id*. at 10-13.

[37] 38 U.S.C. § 3011(a).

6

after September 11, 2001.[38] Each of these programs provides 36 months of educational benefits for eligible individuals.[39] And individuals who are entitled to benefits under both programs are subject to section 3695's 48-month aggregate cap[40] and are not permitted to receive both benefits concurrently.[41]

It is undisputed that appellant meets all the eligibility requirements under the MGIB and Post-9/11 programs. In relevant part, to receive MGIB benefits, an individual must serve "at least two years of continuous active duty" if the "obligated period of active duty is three years or more."[42] And once those 2 continuous years of active duty are completed, the individual must either continue on active duty or separate from active duty with an honorable discharge.[43]

With respect to Post-9/11 benefits, individuals are entitled to benefits under that program if they begin service on or after September 11, 2001 and serve "an aggregate of at least 36 months on active duty."[44] Similar to MGIB benefits, once the durational requirement for Post-9/11 benefits is satisfied, an individual must either continue to serve on active duty[45] or separate from active duty with an honorable discharge.[46]

There is no dispute that Ms. Perkins meets the basic eligibility requirements for both programs, leaving aside for the moment whether she is entitled to obtain benefits under both programs given the issue before the Court in this appeal. All agree that appellant had a 6-year period of active-duty service.[47] And we know that she received an honorable discharge.[48] This length of service could make appellant eligible under both the MGIB and Post-9/11 programs in several ways. For example, her first 2 years of active duty from August 2014 to August 2016 could count towards MGIB benefits and the 36-month-aggregate from her August 2016 to August 2019

---

[38] 38 U.S.C. § 3311(a), (b).

[39] 38 U.S.C. §§ 3013, 3312(a).

[40] 38 U.S.C. § 3695.

[41] 38 U.S.C. § 3681(b)(1).

[42] 38 U.S.C. § 3011(a)(1)(A)(i).

[43] 38 U.S.C. § 3011(a)(3)(A)-(B).

[44] 38 U.S.C. § 3311(b)(1).

[45] 38 U.S.C. § 3311(b)(1)(B)(i).

[46] 38 U.S.C. § 3311(b)(1)(B)(ii)-(c)(1).

[47] R. at 236; *see* R. at 5 (Board decision recognizes 6 years of active-duty service).

[48] R. at 236.

time on active duty could count towards her Post-9/11 benefits. Alternatively, appellant could count her service from August 2018 to August 2020 towards MGIB benefits and her service from August 2014 to August 2017 towards Post-9/11 benefits. The point is that there are several permutations under which appellant's active duty service makes her eligible for benefits under both programs.

Finally, and as particularly relevant to the issue on appeal, it's clear that appellant can establish her eligibility for benefits under each program without counting any time in service twice. From her 6 years of service, appellant can assign a set of 2 consecutive years to establish eligibility for MGIB benefits. And aside from those 2 consecutive years of service, appellant can allocate a separate set of 3 years of service to establish eligibility for Post-9/11 benefits. Indeed, the Secretary even states that "[a]ppellant's single period of service could satisfy the minimum requirements for full benefits under either the [MGIB] or Post-9/11 GI [B]ill[] because of the *duration* of her service."[49] And during oral argument, the Secretary's counsel confirmed this position, specifically that, leaving aside the argument about the effective date of section 3322(h), appellant's length of service alone entitles her to both MGIB and Post-9/11 benefits.[50] Of course, whether the law allows appellant to use her 6 years of continuous service to obtain benefits under both programs is the question we have to answer. But before doing so, we step back to consider what the Supreme Court did in *Rudisill*.

## B.   Rudisill

We begin by providing the factual background and legal context of *Rudisill* to explain and underscore its applicability to the appeal before us. Mr. Rudisill served a total of 8 years of active duty in the U.S. Army.[51] His service consisted of three separate periods of obligated service: (1) from January 2000 to June 2002;[52] (2) from June 2004 to December 2005;[53] and (3) from

---

[49] Secretary's Br. at 10 (emphasis added).

[50] OA at 26:35-27:06, 47:43-48:00.

[51] *Rudisill*, 601 U.S. at 294.

[52] *Id*. at 303 n.3.

[53] *Id*.

8

November 2007 to August 2011.[54] He received an honorable discharge from each period of service.[55]

Mr. Rudisill earned an undergraduate degree between his second and third periods of service.[56] He used 25 months and 14 days of the MGIB benefits he earned from his first period of service to fund his undergraduate education.[57] After his third period of service, he sought to obtain approximately 23 months of Post-9/11 benefits to support his postgraduate education up to the 48-month cap under section 3695.[58] Instead, VA issued a COE stating that Mr. Rudisill was eligible for 10 months and 16 days of Post-9/11 benefits.[59] VA determined that the amount of Post-9/11 benefits Mr. Rudisill was eligible to receive was equivalent to the amount of his remaining MGIB benefits under the individual program's 36-month limit.[60] Mr. Rudisill disagreed with the eligibility determination. He believed he was eligible for 22 months and 16 days of Post-9/11 benefits based on section 3695's 48-month aggregate cap due to his entitlement to both programs.[61] The Board affirmed VA's decision.[62] Following this Court's reversal of the Board decision, the Federal Circuit first ruled in favor of Mr. Rudisill in a panel decision but then ruled against him sitting en banc before his case ultimately reached the Supreme Court.[63]

In *Rudisill*, the Supreme Court dealt with entitlement to both MGIB and Post-9/11 benefits in the context of a veteran whose active duty service contained breaks in continuity. Specifically, the Supreme Court addressed whether veterans with separate entitlements to both MGIB and Post-9/11 benefits, like Mr. Rudisill, can use those benefits in any order up to section 3695's 48-month cap instead of the 36-month cap under section 3327(d)(2).[64] Significant to our decision here, the

---

[54] *Id.*

[55] *Id.* at 303.

[56] *Id.*

[57] *Id.* at 303-04.

[58] *Id.* at 304.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.* at 305; *BO v. Wilkie*, 31 Vet.App. 321 (2019), *aff'd sub nom. Rudisill v. McDonough*, 4 F.4th 1297 (Fed. Cir. 2021), *rev'd*, 55 F.4th 879 (Fed. Cir. 2022) (en banc).

[64] *Rudisill*, 601 U.S. at 294-95.

majority clearly and expressly made clear that it was Mr. Rudisill's *length* of service and not his *periods* of service through which he earned two separate entitlements to both MGIB and Post-9/11 benefits.[65] The Court acknowledged Mr. Rudisill's separate periods of service but emphasized that it was the length of his service that made the difference in its analysis.[66]

The Supreme Court held that a veteran with separate entitlements to both MGIB and Post-9/11 benefits can receive up to 36 months of education benefits under each program, in any order, subject to section 3695's 48-month aggregate cap.[67] The Court concluded that section 3322(d) didn't apply in Mr. Rudisill's situation because he did not have to coordinate his separate entitlements to MGIB and Post-9/11 benefits through that provision to receive Post-9/11 benefits.[68] The majority explained that section 3322(d) served as a coordination function to effectuate an exchange of entitlement from MGIB benefits to Post-9/11 benefits through certain provisions under section 3327.[69] When an individual makes a section 3327(a) election, section 3327(d)(1) prompts a swap: entitlement to Post-9/11 benefits replaces entitlement to MGIB benefits.[70] And section 3322(d)(2) limits the amount of Post-9/11 benefits to the amount of unused MGIB benefits at the time of the section 3327(a) election, subject to the individual program's 36-month cap.[71]

The Supreme Court underscored that Mr. Rudisill fell outside the category of individuals who needed to coordinate benefits under section 3322(d) to access Post-9/11 benefits via a section 3327 election.[72] The Court determined that an election under section 3327(a) was an optional means to irrevocably swap entitlement from MGIB benefits to Post-9/11 benefits for individuals who had overlapping eligibility—but not separate entitlements—under both programs.[73] Rather, the Court discussed that section 3322(d) applied to individuals who, unlike Mr. Rudisill, earned overlapping eligibility for both MGIB and Post-9/11 benefits based on the same period of service

---

[65] *Id.* at 302, 305-06.

[66] *Id.* at 306.

[67] *Id.*

[68] *Id.* at 309.

[69] *Id.* at 307-08.

[70] *Id.* at 312-13.

[71] *Id.* at 312.

[72] *Id.* at 295-96, 308-09, 311-12.

[73] *Id.* at 310-11.

and wished to swap their entitlement from MGIB benefits to Post-9/11 benefits.[74] Section 3322(d) offered such individuals a way to replace MGIB benefits with Post-9/11 benefits through section 3327.[75] To demonstrate this, the Court provided a hypothetical in which a veteran accrued 36 months of educational benefits through his 3 years of active service.[76] The Court established that the hypothetical veteran had overlapping eligibility for both MGIB and Post-9/11 benefits but could only be entitled to one type of educational benefit because his eligibility for the two educational benefits was confined to a 3-year period of service.[77] There was no way for the veteran to establish entitlement to both programs without having to use at least 1 year twice.[78] And so the Court determined that Congress devised the election mechanism in section 3327(a) so that individuals who would prefer to swap their MGIB benefits for Post-9/11 benefits could do so.[79]

The Supreme Court also acknowledged overlapping eligibility for MGIB and Post-9/11 benefits with respect to section 3322(h). The Court noted that section 3322(h)(1) requires individuals with overlapping eligibility based on overlapping service to elect one of the two benefits programs to credit the eligible service period towards.[80] Similar to the logic behind section 3327(a)'s election mechanism, the majority mentioned that subsection (h)(1) was enacted so that individuals "may not receive double credit for a single period of service."[81]

*C. The Board's reasons for denying appellant entitlement to MGIB benefits, reasons that the Secretary echoes, are wrong.*

Returning to the appeal here, the Board advanced two reasons for denying appellant benefits under the MGIB, and the Secretary defends the Board on both fronts. First, the Board found that appellant's active duty service spanned a single, continuous period.[82] As the Secretary explains, such a single continuous period of service distinguishes this case from the Supreme

---

[74] *Id.* at 308.

[75] *Id.* at 308-09.

[76] *Id.* at 312-13.

[77] *Id.* at 313.

[78] *Id.*

[79] *Id.*

[80] *Id.* at 301.

[81] *Id.*

[82] R. at 7.

Court's decision in *Rudisill*.[83] Second, the Board considered that single period-of-service designation and determined that section 3322(h)(1) applied as a bar to eligibility for more than one educational benefit under title 38 because appellant's service occurred entirely after subsection (h)'s effective date, August 1, 2011.[84] The Secretary too relies heavily on the date on which subsection (h) became effective as a reason to affirm the decision on appeal.[85] We will discuss each issue in turn, beginning with the argument concerning the impact of *Rudisill* and then turning to the issue about the effective date of subsection (h).

Before addressing the arguments, we pause to recite certain familiar legal principles that guide our work. At base, this appeal concerns statutory interpretation. "Courts interpret statutes, no matter the context, based on the traditional tools of statutory construction."[86] "Courts must [also] exercise their independent judgment in deciding whether an agency has acted within its statutory authority."[87] "[I]nterpretation of a statute . . . is a question of law,"[88] and "[t]he Court reviews statutory construction questions de novo."[89] It is well-settled that when interpreting a statute, "[w]e look to the plain meaning of the statute, and when we find the plain meaning, our job is simply to apply it."[90] In doing so, "'we look first to [the statutory] language, giving the words used their ordinary meaning.'"[91] But we don't put blinders on because, "[c]ontext always matters."[92] In sum, if the statutory language is unambiguous and "the statutory scheme is coherent and consistent," then our statutory inquiry ends.[93]

---

[83] *See* Secretary's Br. at 10-13.

[84] R. at 7-8.

[85] *See* Secretary's Br. at 4-8.

[86] *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 374 (2024).

[87] *Id.* at 412.

[88] *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003); *see Saunders v. Wilkie*, 886 F.3d 1356, 1360 (Fed. Cir. 2018).

[89] *Martinez v. Wilkie*, 31 Vet.App. 170, 175 (2019) (citing 38 U.S.C. § 7261(a)(1)).

[90] *Frantzis v. McDonough*, 35 Vet.App. 354, 360-61 (2022), *aff'd*, 104 F.4th 262 (Fed. Cir. 2024); *see Kisor v. Wilkie*, 588 U.S. 558, 574-75 (2019); *Artis v. District of Columbia*, 583 U.S. 71, 83 (2018); *Frederick v. Shinseki*, 684 F.3d 1263, 1269 (Fed. Cir. 2012).

[91] *Casey v. Wilkie,* 31 Vet.App. 260, 265 (2019).

[92] *Van Dermark v. McDonough*, 57 F.4th 1374, 1381 (Fed. Cir. 2023); *see Casey*, 31 Vet.App. at 265.

[93] *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).

Because it is at the heart of much of the Board's reasoning and the Secretary's position on appeal, we set out section 3322(h)(1) right up front:

> (h) Bar to duplication of eligibility based on a single event or period of service.

>> (1) Active-duty service. An individual with qualifying service in the Armed Forces that establishes eligibility on the part of such individual for educational assistance under this chapter, chapter 30 or 32 of this title, and chapter 1606 or 1607 of title 10, shall elect (in such form and manner as the Secretary may prescribe) under which authority such service is to be credited.[94]

### 1. *Rudisill* and Appellant's Nonoverlapping Qualifying Service

As we explained above, in *Rudisill*, the Supreme Court held that a veteran with separate periods of qualifying service establishing eligibility for benefits under both the MGIB and Post-9/11 programs can receive up to 36 months of education benefits under each program, in any order, subject to section 3695's 48-month aggregate cap on such educational benefits.[95] The Supreme Court's reasoning in *Rudisill* is highly significant for our resolution of the appeal before us.

First, the Supreme Court highlighted that its analysis did *not* focus on the petitioner's periods of service.[96] Instead, the Court emphasized that the petitioner's "length of service"[97] or "lengthy service"[98] was the key for the Court's conclusion that Mr. Rudisill was separately entitled to both MGIB and Post-9/11 benefits.[99] In the *Rudisill* majority's words:

> Rudisill earned two separate benefits entitlements, one per the Montgomery GI Bill and the other per the Post-9/11 GI Bill, by serving in the military for nearly eight years over three separate periods. Notably, our analysis does not focus on his periods of service. Contra, [Justice Thomas' dissent]. Rather, what matters is that his lengthy service conferred two separate entitlements. [100]

---

[94] 38 U.S.C. § 3322(h)(1).

[95] *Rudisill*, 601 U.S. at 294-95.

[96] *Id*. at 295 (stating "[f]ocusing on these two separate benefits entitlements—rather than on his periods of service—leads to two relevant observations about [38 U.S.C. § 3327]"), 306 ("Notably, our analysis does not focus on his periods of service.").

[97] *Id*. at 305 ("It is undisputed that Rudisill earned two separate entitlements to educational benefits due to the length of his military service.").

[98] *Id*. at 306.

[99] *Id*. at 302 ("If servicemembers serve for long enough, they may be entitled to both [MGIB and Post-9/11 GI Bill benefits].").

[100] *Id*. at 306 (internal citation omitted).

In other words, the majority in *Rudisill* not only told us what the basis for its decision *was*—length of service—but it also affirmatively disclaimed the basis of the dissent in that case—distinct periods of service.[101] And because of the length of Mr. Rudisill's service, he was eligible for benefits under both the MGIB and Post-9/11 programs.

Second, the Supreme Court recognized that section 3322, a provision entitled "[b]ar to duplication of educational assistance benefits," described certain situations in which an individual entitled to both benefits would need to coordinate the receipt of benefits or make elections about under which program the veteran wished to receive benefits.[102] The Supreme Court considered much of section 3322 to be irrelevant with respect to Mr. Rudisill's situation. Tellingly, the majority stated that "[t]here is no duplication for someone in Mr. Rudisill's position. He earned each benefit separately, and he is asking to receive each benefit separately."[103] Other than substituting "Rudisill" for "Perkins" and changing "he" to "she," the Supreme Court could have been describing the case before us. Ms. Perkins, just like Mr. Rudisill, through her lengthy active-duty service, earned entitlement to benefits under both the MGIB and Post-9/11 programs. All she seeks is to use the two benefits she earned—just like Mr. Rudisill. And yet the Secretary again seeks to thwart the efforts of a veteran with lengthy service to receive all the benefits to which she is due.

The Supreme Court briefly mentioned section 3322(h), the provision on which the Secretary puts such great emphasis and that we will elaborate on below. It stated that subpart (h)(1) "ensures that an individual may not receive double credit for a single period of service" but that the individual must elect under which authority his or her service is to be credited.[104] But the Court always returned to the importance of the length of service. Indeed, in the paragraph following its discussion of section 3322, the Court stated that if a servicemember serves long enough, that individual may be entitled to multiple educational benefits.[105]

---

[101] *Id.*

[102] *Id.*

[103] *Id.* at 309.

[104] *Id.* at 301.

[105] *Id.* at 302.

Simply put, if an individual served long enough, that individual may be entitled to both MGIB and Post-9/11 benefits,[106] as long as receiving these benefits is not concurrent.[107] Appellant's 6 years of service qualifies her for both MGIB and Post-9/11 benefits, just as it did for Mr. Rudisill. Stated differently, the sequel to *Rudisill* turns out the same as the original.

We will turn to the specific argument the Secretary asserts concerning section 3322(h) in a moment. But there is something else about section 3322(h) that is instructive in this appeal. In 2011, Congress added subsection (h) through the Post-9/11 Veterans Educational Assistance Improvements Act of 2010.[108] The following passage from a Senate committee report sets out an example of the concern that motivated Congress to add subsection (h):

> [A]n individual, who entered into service on September 1, 2002, and who completed three years of service, could have established eligibility for 36 months of educational assistance under the MGIB in addition to eligibility for 36 months of educational assistance under the Post-9/11 GI Bill. Subject to the 48-month limitation on aggregate months of assistance under two or more programs provided for in section 3695 of title 38, this means that an individual, who exhausts entitlement to 36 months of training under the MGIB, can subsequently enroll and receive an additional 12 months of entitlement under the Post-9/11 GI Bill based on the same period of service.[109]

The individual in the Senate committee's hypothetical is double-dipping by using the same 3 years of service to establish eligibility for benefits under both the MGIB and the Post-9/11 programs. Given the example that Congress provided and its awareness that a 3-year period of service would satisfy the minimum service requirements for MGIB benefits (i.e., because a 2-year period of continuous service under 38 U.S.C. § 3011(a)(1)(A)(i) is satisfied), and to Post-9/11 GI Bill benefits (i.e., because a 3-year period constitutes a total of 36 months under 38 U.S.C. § 3311(b)(1)(a)), it is clear that Congress intended subsection (h) to prevent entitlement to multiple educational benefits under title 38 from *overlapping* active-duty service. In other words, Congress did not want a servicemember to be able to use the same time in service twice—once to qualify

---

[106] *Id.*

[107] 38 U.S.C. § 3681(b)(1).

[108] Pub. L. No. 111-377, § 111(e), 124 Stat. 4106, 4120-21 (Jan. 4, 2011) (stating the effective date for that amendment as Aug. 1, 2011).

[109] S. REP. NO. 111-346, at 19 (Sept. 29, 2010).

15

for benefits under the MGIB and again to qualify for benefits under the Post-9/11 program. That is why subsection (h) requires individuals to choose only one education benefit if they have overlapping dates of service applicable to more than one education benefit. But just as in *Rudisill*, the Supreme Court rejected the application of various coordination and election provisions because Mr. Rudisill did not have overlapping service—the same is true for Ms. Perkins.

In sum, it is difficult to see how the decision in *Rudisill* doesn't effectively answer the question before us. Mr. Rudisill had lengthy service in the military, so lengthy that he established eligibility for benefits under both the MGIB and Post-9/11 programs without using any of his service time twice. Plus, we know that the rationale for the Supreme Court's decision did not rest on anything about Mr. Rudisill's "periods of service." Moreover, Mr. Rudisill's situation did not raise the concern of double-dipping that was the motivation for subsection (h). Everything we have just noted about Mr. Rudisill is equally applicable to Ms. Perkins. Unless the Secretary is correct about his argument about the effective date of subsection (h), a matter we turn to next, there simply is no principled way to distinguish *Rudisill* from the case before us.

### 2. The Effective Date of Section 3322(h)

This brings us to section 3322(h). The Board, in part, denied appellant entitlement to MGIB benefits by applying section 3322(h).[110] Specifically, the Board concluded that subsection (h) applied because appellant's active service began after August 1, 2011.[111] Both in his brief and at oral argument, the Secretary also maintains that the effective date of subsection (h) is the reason the provision applies to appellant.[112] In other words, the Secretary maintains that the effective date of subsection (h) somehow provides the foundation for concluding that *Rudisill* does not practically decide this appeal.

How is it that the effective date of subsection (h) could distinguish this case from *Rudisill*? After all, both Mr. Rudisill and Ms. Perkins filed their claims for educational benefits after the August 1, 2011, effective date for subsection (h).[113] The most natural reading of an effective date would be that a given provision applies to those who file after the effective date of that provision.

---

[110] R. at 7-8.

[111] *Id*.

[112] Secretary's Br. at 12-14; OA at 47:43-48:00.

[113] *Rudisill*, 601 U.S. at 304; R. at 65-70.

The Secretary advances an entirely different notion of what the August 1, 2011, effective date for subsection (h) means. He maintains that the effective date goes to when the qualifying service takes place. Put differently, according to the Secretary, section 3322(h)(1) bars individuals with a single, obligated period of service that began on or after August 1, 2011, from obtaining more than one educational benefit even if such an individual would otherwise come within the scope of the Supreme Court's *Rudisill* decision.[114] We categorically reject the Secretary's position.

First, and most significantly, the Secretary's position is entirely divorced from the statutory text. There is absolutely nothing in subsection (h) (or anywhere else for that matter) to indicate that the August 1, 2011, effective date has anything to do with when a veteran served in the Armed Forces. It is not appropriate for a court to add language to a statute.[115] Our job is to enforce a statute according to the plain language Congress used.[116] Here, it is clear beyond doubt that Congress says absolutely nothing in subsection (h) about when a veteran's service took place. So, it would be inappropriate for us to add this qualification. Therefore, as we have discussed above, there is nothing in subsection (h) that distinguishes Ms. Perkins' appeal from that of Mr. Rudisill's.[117]

We could stop here, because the plain text of subsection (h) is fatal to the Secretary's argument in defense of the Board's reliance on section 3322(h). But there is more to support our conclusion. For example, as we noted above, the Supreme Court mentioned subsection (h) in *Rudisill*.[118] If the Secretary (and the Board) were correct about subsection (h) going to the date of a veteran's service, there would have been no need for the Supreme Court to say anything about that statutory provision; it would not have applied to Mr. Rudisill. Of course, we are not suggesting that this point is dispositive in any sense. But it is instructive.

What's more, the legislative history of subsection (h) is entirely at odds with the Secretary's position that the effective date for subsection (h) refers to when qualifying service took place. We set out a part of a Senate committee report concerning subsection (h) earlier to support the notion

---

[114] Secretary's Br. at 3, 12-13; OA at 32:22-34:05 (citing Sen. Rep. 111-346, at 19).

[115] *Bates v. U.S.*, 522 U.S. 23, 24 (1997); *see Energy East Corp. v. U.S.*, 645 F.3d 1358, 1362 (2011) ("This court cannot simply add phrases or words that do not appear in the statute.").

[116] *Lacey v. Wilkie*, 32 Vet.App. 71, 75 (citing *King v. Burwell*, 576 U.S. 473, 486 (2015)).

[117] Because, as we've described here and earlier, we conclude that subsection (h) is not applicable to Ms. Perkins' situation, we have no call to discuss the Secretary's arguments concerning the meaning of "period of service" or the parties' dispute about the placement of that phrase only in the heading of subsection (h). We express no views on either of these matters.

[118] *See Rudisill*, 601 U.S. at 301, 311; *see also id.* at 326 (Thomas, J., dissenting).

that Congress was concerned with double-dipping.[119] But that passage of legislative history also undermines the Secretary's argument about the importance of the August 1, 2011, effective date for subsection (h). The example the Senate committee report used concerns an individual who entered service in September 2002 and completed 3 years of service from that date (i.e., September 2002 to September 2005).[120] If the Secretary were correct about his view of the import of the effective date of subsection (h), the Senate committee report uses an example for which subsection (h) would not apply. That seems rather remarkable or, perhaps better said, farfetched. Why would a congressional committee use as an example a situation in which the statute did not apply? Perhaps it was just a mistake. But we think that a far better conclusion is that the Secretary is simply wrong about the meaning he assigns to the effective date of subsection (h).

Finally, the Secretary's interpretation of the statute that it would apply only to active service that began on or after August 1, 2011, but not before that date, leads to some rather odd results. For example, if the Secretary is right, Congress intended to treat veterans with identical lengthy service differently simply because of the vagaries of when that service took place. It's difficult to comprehend why Congress would have done so. In other words, under the Secretary's interpretation, entering service on or after August 1, 2011, and serving a lengthy period of active-duty service, even one longer than appellant's, would render that veteran ineligible for more than one educational benefit under title 38 even though someone with shorter service before August 1, 2011, would be entitled to more benefits. As we say, it's difficult to see why Congress would make that choice. Moreover, the Secretary's reading of the statute would lead to absurd results by *disincentivizing* individuals who entered service after July 31, 2011, to commit to lengthy service, or at least to lengthy service not separated by breaks. It seems bizarre that Congress would proceed in that way. Absurd results are something that courts should avoid when interpreting statutes.[121] To be clear, we are not suggesting that these observations about consequences could supplant clear statutory text. Rather, these points merely underscore why the Secretary's position, defending what the Board did, lacks merit.[122]

---

[119] *See supra* at 15.

[120] S. REP. No. 111-346, at 19.

[121] *Atencio v. O'Rourke*, 30 Vet.App. 74, 83 (2018) (citing *U.S. v. Wilson*, 503 U.S. 329, 334 (1992) ("[A]bsurd results are to be avoided.")); *Timex V.I., Inc. v. U.S.*, 157 F.3d 879, 886 (Fed. Cir. 1998).

[122] On May 6, 2025, appellant's counsel filed supplemental authority with the Court pursuant to this Court's Rule 30(b),

******

In sum, *Rudisill* essentially decides this case for us. Appellant's lengthy active-duty service qualified her for benefits under both the MGIB and Post-9/11 programs without her having to use any of her time in service more than once to establish eligibility. So, just like Mr. Rudisill, Ms. Perkins is entitled to use both benefits up to the 48-month statutory maximum under section 3695. And there is nothing about the effective date of section 3322(h) that alters that conclusion.

### D. Remedy

Finally, we reach the question of remedy. "[W]here the Board has incorrectly applied the law, . . . remand is the appropriate remedy."[123] However, reversal is appropriate when there is legal error, no additional factfinding is required,[124] and there is no basis in the record for a contrary conclusion.[125] Reversal is the appropriate remedy here because the Board performed all the factfinding necessary to resolve appellant's appeal. And so we will reverse the Board's decision and remand this matter for VA to assign appellant the appropriate educational benefits under the MGIB and Post-9/11 GI Bill based on the correct interpretation of the governing law we have described.

## IV. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record, and the governing law, the Court REVERSES the August 6, 2024, Board decision. We REMAND this matter for VA to assign appellant the appropriate educational benefits under the MGIB and Post-9/11 GI Bill based on the correct interpretation of the governing law we have described.

---

citing excerpts of proposed briefs in *Yoon v. Collins*, U.S. Vet.App. No. 25-255 and noting that the Secretary adheres to a contrary position in *Yoon* from that in *Perkins* concerning his application of section 3322(h). Appellant's counsel explained that the Secretary asserts that section 3322(h) would bar the two petitioners in *Yoon* from obtaining entitlement to educational benefits under both the MGIB and Post-9/11 programs, despite their lengthy single period of service beginning in 1998 and 1987 and each spanning over 20 years. Appellant's May 6, 2025, Notice at 2; Exhibit B. The Secretary's application of section 3322(h) in *Yoon* is inconsistent with his assertion during oral argument. *See supra* note 33 (OA at 26:35-27:06, 44:58-46:10). We note the inconsistencies in the Secretary's interpretation of subsection (h) and, as explained above, we reiterate that Congress says nothing about when a veteran's service took place with respect to subsection (h).

[123] *Tucker v. West*, 11 Vet.App. 369, 374 (1998).

[124] *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013).

[125] *Gutierrez v. Principi*, 19 Vet. App. 1, 10 (2004) ("reversal is the appropriate remedy when the only permissible view of the evidence is contrary to the Board's decision").

*Not Published*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

NO: 24-6515

KASSIDY A. PERKINS, APPELLANT,

V.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

**JUDGMENT**

The Court has issued a decision in this case. The time allowed for motions under Rule 35 of the Court's Rules of Practice and Procedure has expired.

Under Rule 36, judgment is entered and effective this date.

Dated: June 10, 2025                FOR THE COURT:

                                    TIFFANY M. WAGNER
                                    Clerk of the Court

                                    By: /s/ Anita Fulwood
                                    Deputy Clerk

Copies to:

Timothy L. McHugh, Esq.

VA General Counsel (027)

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this filing complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A).  This filing is printed in Garamond 14-point font, and it contains no more than 5,106 words, excluding the items listed in the Federal Rules of Appellate Procedure 27(a)(2)(B).

/s/ Emma E. Bond
Emma E. Bond
*Counsel for Respondent*